**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| RE/MAX International, Inc., )<br><br>Plaintiff, )<br><br>v. )<br><br>TREND SETTER REALTY, LLC, )<br>a Texas limited liability company; )<br><br>PAVNOUTY ABRAHAM, an individual; )<br><br>and )<br><br>DEBORAH N. MILLER, an individual )<br><br>Defendants. ) | **CIVIL ACTION NO. 4:07-CV-02426** |

**MEMORANDUM IN SUPPORT OF**
**<u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Anthony F. Matheny
Texas State Bar No. 24002543
GREENBERG TRAURIG LLP
1000 Louisiana St., Suite 1800
Houston, Texas 77002
Phone: (713) 374-3583
Fax: (713) 754-7583

ATTORNEYS FOR PLAINTIFF,
RE/MAX INTERNATIONAL, INC.

# TABLE OF CONTENTS

I.      SUMMARY OF ARGUMENT .......................................................................... 1

II.     NATURE AND STAGE OF PROCEEDINGS ........................................... 3

III.    STATEMENT OF ISSUES ............................................................................ 5

IV.     SUMMARY JUDGMENT STANDARD ..................................................... 5

V.      UNDISPUTED FACTS ................................................................................. 6

VI.     ARGUMENT AND AUTHORITIES ........................................................ 13

    A.    Defendants Are Infringing RE/MAX's Trademark ................................ 13

    1.    RE/MAX's Ownership of Its Marks and Priority of Use Are Not Disputed ....... 14

    2.    Defendants' Use of the Red-White-Blue Signs in Connection with Real Estate
          Brokerage Services Is Likely to Cause Confusion ................................................. 16
          a.    Similarity of the Marks ................................................................. 16
          b.    Similarity of the Services ............................................................. 16
          c.    Similarity of Purchasers .............................................................. 17
          d.    Similarity of Advertising Channels ........................................... 17
          e.    Intent of the Defendants to Pass Off ......................................... 17
          f.    Actual Confusion ........................................................................... 18

    3.    Conclusion ................................................................................................. 20

    B.    Defendant Has Engaged in Unfair Competition under Federal
          and Common Law .................................................................................... 20

    C.    Defendant Miller Has Breached Her Agreement With RE/MAX Elite ............... 21

    D.    Trend Setter's Federal Trademark Registration No. 3,222,708
          Should Be Cancelled ............................................................................... 22

    E.    RE/MAX's Federal Trademark Registration No. 1,702,048
          Should Not Be Cancelled ....................................................................... 22

VII.    CONCLUSION ............................................................................................ 24

# TABLE OF CITATIONS

**Federal Cases**

*American Rice, Inc. v. Producers Rice Mill, Inc.*,
518 F.3d 321 (5th Cir. 2008) ................................................. 13, 14, 18

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................. 5

*Beer Nuts, Inc. v. Clover Club Foods, Co.*,
711 F.2d 934 (10th Cir. 1983) ................................................ 19

*Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg.*,
510 F.2d 1004 (5th Cir. 1975) ................................................ 22

*Brennan's Inc. v. Dickie Brennan & Co. Inc.*,
376 F.3d 356 (5th Cir. 2004) ................................................. 20

*Celotex Corp. v. Carrett*,
477 U.S. 317 (1986) ............................................................... 5, 6

*Creative Gifts, Inc. v. UFO*,
235 F.3d 540 (10th Cir. 2000) ................................................ 25

*Eh Yacht, LLC v Egg Harbor, LLC*,
84 F.Supp.2d 556 (D.N.J. 2000) ............................................ 26

*Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*,
754 F.2d 591 (5th Cir. 1985) ................................................. 20

*Glover v. Ampak, Inc.*,
74 F.3d 57 (4th Cir. 1996) .................................................... 24, 25

*Jet, Inc. v. Sewage Aeration Sys.*,
223 F.3d 1360 (Fed. Cir. 2000) .............................................. 23

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................... 6

*McGraw-Edison Co. v. Walt Disney Productions*,
787 F.2d 1163 (7th Cir. 1986) ................................................ 18

*Moore Business Forms, Inc. v. Ryu*,
960 F.2d 486 (5th Cir. 1992) ................................................. 20

*Pacific Indem. Co. v. Broward County*,
465 F.2d 99 (5th Cir. 1972) .................................................... 24

*Saratoga Vichy Spring Co. v. Lehman*,
625 F.2d 1037 (2d Cir. 1980) ................................................ 26

*Scott Fetzer Co. v. House of Vacuums Inc.*,
   381 F.3d 477 (5th Cir. 2004) ........................................................................ 20

*Westchester Media v. PRL USA Holdings, Inc.*,
   214 F.3d 658 (5th Cir. 2000) ........................................................................ 14

*World Carpets, Inc. v. Dick Littrell's New World Carpets*,
   438 F.2d 482 (5th Cir. 1971) .................................................................. 19, 20


**State Cases**

*Zapata Corp. v. Zapata Trading Int'l*,
   841 S.W.2d 45 (Tex. App. 1992) .................................................................. 14


**Administrative Decisions**

*In re United States Dep't of the Interior*,
   142 U.S.P.Q. 506 (TTAB 1964) .................................................................. 25

**Federal Statutes**

15 U.S.C. §1052 (b) ........................................................................................ 25

15 U.S.C. § 1052(d) ........................................................................................ 23

15 U.S.C. § 1065 ............................................................................................... 6

15 U.S.C. § 1119 ........................................................................................... 23

15 U.S.C. § 1127 ........................................................................................... 26

**Other Sources**

*Trademark Manual of Examining Procedure* § 1204 .................................... 25

Plaintiff RE/MAX International, Inc. ("RE/MAX") submits this Memorandum In Support of its Motion for Partial Summary Judgment against Defendants Trend Setter Realty, Inc. ("Trend Setter"), Pavnouty Abraham and Deborah Miller (collectively "Defendants") and would respectfully show the Court as follows:

## I.     <u>SUMMARY OF ARGUMENT</u>

Since 1974, RE/MAX and its affiliates have provided real estate brokerage services under a trademark that includes a horizontal red-over-white-over-blue tri-bar design. In 2005, fully aware of RE/MAX, Defendants began using a red-over-white-over-blue tri-bar design on its real estate yard signs to advertise and promote in the greater Houston and San Antonio areas their own real estate brokerage services, which compete directly with affiliates of the RE/MAX Network. A side-by-side comparison of the two signs is shown below:

 

RE/MAX initiated this action because Defendants' signs are likely to cause confusion among the consuming public as to the source, affiliation, connection or association of Defendants' services with RE/MAX and the RE/MAX network.

In short, the undisputed evidence shows that Defendants offer the same, directly competitive services, in the same geographic areas, to similar customers, through the same

marketing channels. The evidence further shows that Defendants had full knowledge of RE/MAX and its yard sign prior to commencing use of Defendants' infringing sign.

RE/MAX also developed substantial evidence of actual consumer confusion with respect to Defendants' sign. Dr. Robert A. Peterson, a well respected survey expert from the University of Texas, designed and oversaw a survey revealing that 25.3% of interviewed consumers mistakenly identified Defendants' sign as a RE/MAX sign. By contrast, when consumers were shown the Defendants' sign with the tri-bar design removed (as shown below), the percentage of consumers associating the sign with RE/MAX plummeted virtually to zero.

**Photo of Trend Setter Sign Used in Survey Participants (Sign Magnified for this Brief Only)**      **Photo of Sign with Tri-Bar Design Removed (Survey Control) (Sign Magnified for this Brief Only)**



The substantial evidence outlined above and discussed in more detail below overwhelmingly establishes likelihood of confusion and entitles RE/MAX to a judgment as a matter of law on its claims for trademark infringement under federal law (Count I), Texas statute (Count IV), and common law (Count VI). For the same reasons, RE/MAX is also entitled to a judgment as a matter of law on Defendants' first counterclaim (Defendants' Count I), which seeks a declaration of non-infringement of RE/MAX's trademark rights, and RE/MAX's claim for cancellation of Defendants' federal trademark registration No. 3,222,708 (Count IX).

Additionally, the undisputed evidence shows that shortly before Defendants began using their confusingly similar signs, defendant Miller was affiliated with RE/MAX Elite, a RE/MAX

franchise, as an independent sales agent and signed a contract that prohibited her, *inter alia*, from using RE/MAX's sign design after she departed RE/MAX. The undisputed evidence further shows that Miller chose to ignore the contractual provisions in her agreement, and instead became broker of record for defendant Trend Setter from its founding, where the infringing use of RE/MAX's registered tri-bar design mark continues to this day. The absence of a genuine dispute of material facts as to defendant Miller' breach of contract entitles RE/MAX to a judgment as a matter of law on RE/MAX's Count VIII.

Finally, RE/MAX is entitled to a judgment as a matter of law on Defendants' scattershot counterclaim for cancellation of RE/MAX's Trademark Registration No. 1,702,048 (Defendants' Count III). Defendants' Count III fails because Defendants have adduced no evidence that the RE/MAX Trademark Registration is generic, comprises the flag of the U.S., is not in use, or has been abandoned. Consequently, Defendants cannot meet their burden on Count III.[1]

## II.    NATURE AND STAGE OF PROCEEDINGS

RE/MAX filed suit on July 25, 2007 for trademark infringement under federal, state and common law; federal and state trademark dilution; federal and common law unfair competition, and breach of contract. (*See* Complaint, Docket No. 1). Defendants answered on August 31, 2007, (Docket No. 11), and counterclaimed seeking declarations of non-infringement and non-

---

[1] RE/MAX is not moving for summary judgment on Counts II and V of its Complaint for trademark dilution under federal and state law. However, assuming that Defendants are found liable, and RE/MAX is granted all relief in law and equity to which it shows itself entitled, under its infringement, unfair competition, breach of contract, and cancellation claims on which RE/MAX moves for summary judgment (as well as Defendants' First and Third Counterclaims), RE/MAX believes, at this time, that any additional relief under its dilution claims would be redundant. Thus, although RE/MAX reserves all its rights under its dilution claims, and to seek relief under those claims if necessary for it to recover all relief to which it is entitled, RE/MAX submits that it is possible that granting RE/MAX's motion for partial summary judgment, in its entirety, could make adjudication of RE/MAX's dilution claims unnecessary.

dilution of any trademark and cancellation of U.S. Trademark Registration No. 1,702,048. (*Id.*) On September 24, 2007, RE/MAX answered Defendants' counterclaims. (Docket No. 15).

RE/MAX filed its First Amended Complaint ("FAC", Docket No. 19) after obtaining leave of the Court to add a count seeking cancellation of U.S. trademark registration 3,222,708 for the Trend Setter mark. (Docket No. 20). Defendants never answered the FAC.

On October 15, 2007, the parties submitted a Joint Discovery Plan and the Court entered its Scheduling Order. (Docket Nos. 16 and 17, respectively). On November 1, 2007, RE/MAX served all Defendants with its First Set of Interrogatories, First Set of Requests for Admission, and First Set of Requests for Production of Documents. (*See* Docket Nos. 24 and 25). Defendants failed to respond to any of these discovery requests until March 11, 2008. (Docket No. 31). On May 9, 2008, this Court denied in part and granted in part Defendants' leave to file untimely responses to RE/MAX's discovery requests. (*Id.*) Specifically, the Court held that Defendants' failure to timely respond requests results in: (a) deemed admissions of all Requests for Admission except for Request No. 28; and (b) waiver of all objections except objections based on attorney-client privilege or work-product protection. (*Id.*)

On December 17, 2008, RE/MAX timely served two expert reports from: (1) Mark W. Pedigo regarding RE/MAX's damages; and (2) Robert A. Peterson regarding the likelihood of confusion of Defendants' trademark with RE/MAX's trademark. Defendants did not serve any expert reports, either in rebuttal to the expert reports served by RE/MAX, or in relation to any issues on which Defendants have the burden of proof.

### III.   STATEMENT OF ISSUES

1.   Whether, as a matter of law, Defendants infringed RE/MAX's trademarks.

2.   Whether, as a matter of law, Defendants engaged in unfair competition.

3.   Whether, as a matter of law, defendant Miller breached her contract with RE/MAX Elite, an independently owned and operated RE/MAX franchise.

4.   Whether, as a matter of law, defendant Trend Setter's U.S. Trademark Registration No. 3,222,708 should be cancelled.

5.   Whether Defendants have adduced sufficient evidence to support their claim for cancellation of RE/MAX's U.S. Trademark Registration No. 1,702,048.

### IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Carrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255. A factual dispute bars summary judgment only when the disputed fact is determinative under governing law. *Id.*, at 250. The movant bears the initial burden of articulating the basis for its motion and identifying evidence that shows that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 322. The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing that

there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).


## V.    UNDISPUTED FACTS

### RE/MAX'S Services and Trademark

1.    RE/MAX is the owner of U.S. Trademark Registration No. 1,702,048 for the service mark comprising the red-over-white-over-blue sign design.   (Declaration of Adam Scoville attached hereto ("Scoville Decl."), ¶ 2; *see also* Complaint, Docket No. 1, ¶ 12; pertinent allegations admitted in Answer, Docket No. 11, ¶ 12).   RE/MAX owns several additional U.S. trademark registrations for a family of marks that include the red-over-white-over-blue design or the horizontal bar design together with other words and/or other design elements, including, but not limited to U.S. Trademark Registration Nos. 1,691,854 and 1,720,592.   (Scoville Decl., ¶ 2; Complaint, ¶ 13; Answer, ¶ 13).   Copies of the registration certificates for these marks are attached hereto as **Exhibit A**.

2.    RE/MAX's U.S. Trademark Registration Nos. 1,702,048; 1,691,854; and 1,720,592 have achieved incontestability under 15 U.S.C. § 1065.   (Scoville Decl., ¶ 3; Complaint, ¶ 14; Answer, ¶ 14).

3.    RE/MAX also owns Texas State Trademark Registration No. 55729 that is registered for the mark comprising a red, white, and blue rectangular bar design.   (Scoville Decl., ¶ 4).   A copy of the registration certificate for this mark is attached hereto as **Exhibit B**.   (Where appropriate, all of RE/MAX's statutory and common law rights in the red-over-white-over-blue mark, as described above, are collectively referred to as the "RE/MAX Trademark.").

4.     Throughout the United States, a network of licensed RE/MAX franchisees and their affiliated independent contractor/sales associates are authorized to use the RE/MAX Trademark in connection with providing real estate brokerage services (the "<u>RE/MAX Network</u>"). (Scoville Decl., ¶ 6).

5.     Since at least as early as January 1, 1974, those affiliated with the RE/MAX Network have provided real estate brokerage services in interstate commerce in the United States in connection with the RE/MAX Trademark. (Scoville Decl., ¶ 7).

6.     The RE/MAX Trademark is used on a variety of advertising media including yard signs, business cards, Internet web sites, directional signs, open house signs, hot and cold air balloons, television commercials, billboards, bus stop benches, banners, and other advertising and promotional items. (Scoville Decl., ¶ 8).

7.     Since 1973, RE/MAX and the RE/MAX Network have invested billions of dollars to develop, promote and maintain the RE/MAX Trademark, among other trademarks owned by RE/MAX, in the United States and worldwide. (Scoville Decl., ¶ 9).

8.     Brokers and associates in the RE/MAX Network have used the RE/MAX Trademark in connection with representing either the buyer or the seller over 20 million times in real estate sale transactions in the United States and worldwide, resulting in over two and a half trillion dollars in sales volume from 1973 to present date. (Scoville Decl., ¶ 10).

9.     At any given time there are over 400,000 RE/MAX property listings in the United States, all but a small percentage of which generally display prominently a yard sign that includes the RE/MAX Trademark. (Scoville Decl., ¶ 11).

10.    The RE/MAX Network has had continuous presence in the greater Houston area since at least 1979 and San Antonio area since at least 1984. (Scoville Decl., ¶ 12). Since then,

and continuing until the present, RE/MAX and its affiliates have used the RE/MAX Trademark to advertise and promote their real estate brokerage services in the greater Houston and San Antonio areas. (*Id*.).

11.    The yard sign depicted below is an example of the RE/MAX Network's use of the RE/MAX Trademark in connection with providing real estate brokerage services. (Scoville Decl., ¶ 13):



**Defendants' Activities**

12.    On or about February 15, 2003, Defendant Miller entered into an *Independent Contractor Agreement* ("<u>ICA</u>") with Texan Elite Group, Inc., d/b/a RE/MAX Elite, an independently owned and operated RE/MAX franchise. (Scoville Decl., ¶ 14; Request for Admissions, attached hereto as **Exhibit C**, deemed admitted by Defendants per the Court's Order, Docket No. 31 ("Deemed Admissions"), ¶ 1; *see also* Deposition of Deborah Miller attached hereto as **Exhibit I** ("Miller Depo."), pp. 98-99).

13.    The ICA is attached hereto as **Exhibit D**. Paragraph 12 of the ICA is entitled RESTRICTIONS ON SUBSEQUENT BUSINESS ACTIVITY and provides, in part, as follows:

**B.** Contractor acknowledges that he has obtained knowledge of confidential matters, trade secrets, techniques, accounting procedures and other methods developed by Regional and/or International through and in the System, which are owned by Regional and/or International and are necessary and essential to the operation of the RE/MAX System without which information the Contractor could not efficiently, effectively, and profitably operate or conduct his business. Contractor further acknowledges that such confidential information was unknown to him prior to execution of this Agreement and that the methods developed by Regional and/or International for the real estate service operation are unique and novel to Regional and/or International. *Contractor acknowledges Regional's and/or International's exclusive right to its real estate systems, its method of operation and its distinguishing characteristics, including, but not limited to, service marks, trademarks, trade names, copyrights, certification marks, designs, slogans, logos, telephone numbers, business cards, lawn signs, color combinations and style, names or other advertising copy now or hereafter displayed, used or becoming a part of the RE/MAX business. Contractor agrees neither to infringe upon, use or imitate said system or any of the above distinguishing characteristics after termination or expiration of this Agreement.*

**C.** Because of the difficulty of measuring economic loss to Licensee, Regional and/or International as a result of the breach of any of the covenants of this Section, and because of the immediate and irreparable harm that such a breach would cause Licensee and/or Regional for which they would have not adequate remedy, Contractor agrees that any of the foregoing covenants may be enforced by Licensee and/or Regional by injunction and restraining order. *In the event Licensee and/or Regional are required to employ an attorney to enforce any of the covenants of this Section, or to institute legal proceedings, incident to such enforcement, then Contractor expressly covenants and agrees to pay, in addition to all other sums to which Contractor may be found liable, reasonable attorneys' fees, court costs, and litigation expenses incurred by Licensee and/or Regional.*

(Complaint, ¶ 20; Answer, ¶ 20, emphasis added).

14.     From about February 15, 2003 to February 28, 2005, Miller was a RE/MAX affiliate doing business as a real estate agent in and around Houston, Texas.  (Complaint, ¶ 21; pertinent allegation admitted in Answer, ¶ 21; Miller Depo., pp. 17-19).

15.     RE/MAX Elite has assigned to RE/MAX all of its rights under the ICA, including the right to pursue legal action and to pursue all available remedies for breach of paragraph 12 of the ICA.  (Scoville Decl., ¶ 15; see also Assignment attached hereto as **Exhibit H**).

16.     After Miller's ICA terminated on or about February 28, 2005, she became the broker of record for Defendant Trend Setter.  (Deemed Admissions, ¶ 2; Complaint, ¶ 24; pertinent allegation admitted in Answer, ¶ 24; Miller Depo., pp. 9, 43-44; Deposition of Pavnouty Abraham attached hereto as **Exhibit J** ("Abraham Depo."), p. 109).

17.     Miller and Trend Setter subsequently started using a red-over-white-over-blue sign in conjunction with providing real estate services.  (Complaint, ¶ 29; pertinent allegation admitted in Answer, ¶ 29; Abraham Depo., pp. 109-111).   A color photo of one of the Defendants' yard signs is depicted below.



18.     By the end of 2005, Trend Setter had between 150 and 200 agents advertising their real estate brokerage services using the sign above.  (Abraham Depo., p. 241).  By the end of 2006, the number of agents increased to between 200 and 400, and to between 400 and 600 by the end of 2007.  (*Id*.)  By mid-2008, Trend Setter had approximately 700 agents.  (*Id*., p. 312).

19.     Defendants began using the red-over-white-over-blue mark for real estate brokerage and sales services after RE/MAX's use and registration of the RE/MAX Trademark, and they continue such use. (Complaint, ¶ 29; Answer, ¶ 29; Abraham Depo., pp. 109-111).

20.     Defendants were aware of RE/MAX and the RE/MAX Trademark before they started using their red-over-white-over-blue mark because defendant Miller, while working as an agent affiliated with the RE/MAX Network, acted as a listing agent for several of defendant Abraham's properties in the year 2000.  (Miller Depo., pp. 40-42).  In the course of advertising Abraham's properties, Miller used a RE/MAX sign containing the RE/MAX Trademark.  (*Id.*)

21.     After learning of the Defendants' use of the sign depicted above, RE/MAX notified Defendants on several occasions of RE/MAX's Trademark and that the use of the confusingly similar red-over-white-over-blue sign in conjunction with real estate services was likely to cause consumer confusion.  (Deemed Admissions ¶¶ 3 and 4; Abraham Depo., p. 217).

22.     On May 30, 2006, after RE/MAX first notified Trend Setter of RE/MAX's trademark rights, Trend Setter filed Trademark Application No. 78/895,349 described as follows: "The colors red, white and blue are claimed as a feature of the mark.  The color red appears in the top portion of the rectangle, the color white appears in the stylized representation of the house, and the color blue appears in the bottom rectangle." (Deemed Admissions ¶¶ 5, 12; *see also* **Exhibit E** attached hereto).  Along with this Application, Trend Setter submitted a photo of a yard sign materially similar to the one depicted above in paragraph 17.  (*Id.*).  Trend Setter was aware of at least one of the RE/MAX trademarks before filing this Application.  (*Id.*, ¶ 6).

23.     On March 27, 2007, Trend Setter was issued Federal Service Mark Registration No. 3,222,708 (the "<u>Trend Setter Mark</u>").  (Deemed Admissions ¶5; *see also* **Exhibit F** attached hereto).  The Trend Setter Mark claims a first use in commerce date of October 19, 1998.  (*Id.*; Deemed Admissions ¶¶ 8-11).

24.     Trend Setter continues to use the mark conforming to the photo of the yard sign depicted above in paragraph 17.  (Deemed Admissions ¶ 24).

25.     Defendants' signs depicted above are being used "in connection with real estate brokerage." (Defendants' Response to RE/MAX's Interrogatory No. 1, attached hereto as **Exhibit G;** Abraham Depo., p. 13).

26.     Defendants market or intend to market their services to the "general public with an interest in purchasing or selling real estate." (*Id.*, Interrogatory No. 14).

27.     Defendants market and sell, and intend to market and sell, their services "through the general real estate channels of trade." (*Id.*, Interrogatory No. 15). Defendants advertise their services through "real estate yard signs, brochures, fliers, home listings, and newspaper advertisements" as well as their "publicly available website." (*Id.*, Interrogatory No. 10).

## Evidence of Consumer Confusion

28.     An empirical survey was conducted to determine the likelihood of Defendants' red-over-white-over-blue sign being confused with RE/MAX. (Declaration of Robert A. Peterson ("Peterson Decl."), ¶ 6). The survey consisted of 225 individuals in the Greater Houston Metropolitan area who were 18 years of age or older and who were either using, or considering the use of, a real estate agent or broker to purchase or sell a home. (*Id.*, ¶¶ 7-10).

29.     One hundred and fifty individuals were shown a photograph containing Defendants' red-over-white-over-blue sign and asked a series of open-ended questions regarding what company was being promoted or advertised by the sign. (Peterson Decl., ¶¶ 9-16). An independent sample of 75 individuals was used to assess survey participant "guessing" and survey data "noise." (*Id.*). These individuals were instead shown a picture containing a modified version of Defendants' sign wherein the red-over-white-over-blue color scheme was modified by removing the horizontal red and blue bars. (*Id.*). These individuals were then asked the same questions as the individuals shown Defendants' red-over-white-over-blue Trend Setter

Realty yard sign. (*Id*.). The survey questionnaire was based on the judicially-accepted *Everyready* design. (*Id*., ¶ 17).

30. Approximately 25.3% of the individuals shown a photo of Defendants' yard sign stated that either (i) RE/MAX was the company being promoted or advertised by the sign; (ii) the company being promoted or advertised by the sign was affiliated or connected with RE/MAX; or (iii) the company being promoted or advertised by the sign would have to get permission or approval from RE/MAX to use the sign. (Peterson Decl., ¶ 18).

31. Approximately 2.7% of the individuals shown a picture of a modified Defendants' sign mentioned RE/MAX as the company being promoted or advertised by the sign. (Peterson Decl., ¶¶ 19-20). This 2.7% figure is not statistically different from zero; therefore, it reflects random sampling error in the survey. (*Id*., ¶ 22)

## VI. ARGUMENT AND AUTHORITIES

### A. Defendants Are Infringing RE/MAX's Trademark

To recover on a claim of trademark infringement under the Lanham Act, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion. *American Rice, Inc. v. Producers Rice Mill, Inc*., 518 F.3d 321, 329 (5th Cir. 2008). The factors used by the Fifth Circuit in determining whether a likelihood of confusion exists are: (1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers. *Id.* The absence or presence of any one factor ordinarily is

not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the ... factors." *Id.*

The same likelihood-of-confusion standard applies to claims brought under the Texas Trademark Act or claims for common-law trademark infringement. *Zapata Corp. v. Zapata Trading Int'l*, 841 S.W.2d 45, 49 (Tex. App. 1992); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 n.1 (5th Cir. 2000).

As demonstrated in detail below, Defendants' use of their red-over-white-over-blue signs is likely to cause confusion among consumers as to the source of Defendants' services because (1) the red-over-white-over-blue design of Defendants' sign is virtually identical to the red-over-white-over-blue design mark used and federally registered by RE/MAX prior to any use of Defendants' design; (2) services offered by Defendants are identical to those offered by RE/MAX; (3) Defendants promote their real estate brokerage service in similar advertising channels as those used by RE/MAX; (4) the classes of consumers encountering Defendants' and RE/MAX's signs are identical; and, most importantly, (5) the empirically-conducted survey provides strong evidence that consumers have actually been confused as to the source, affiliation or connection of Defendants' services. For this reason, RE/MAX is entitled to a judgment as a matter of law on the First, Fourth, and Sixth counts of its First Amended Complaint, as well as on Defendants' Count I.

### 1. RE/MAX's Ownership of Its Marks and Priority of Use Are Not Disputed

It is undisputed that RE/MAX is the owner of federal trademark registrations 1,702,048; 1,691,854 and 1,720,592, as well as Texas trademark registration No. 55729. (Undisputed Facts, ¶¶ 1-3). Federal registration of these marks is *prima facie* evidence of RE/MAX's exclusive right to use the registered marks in connection with the services enumerated in the registration.

15 U.S.C. § 1115(a).  It is also not disputed that these registrations have achieved incontestability under 15 U.S.C. § 1065.  (Undisputed Facts, ¶ 2).

RE/MAX and its affiliates have provided real estate brokerage services in interstate commerce in the United States in connection with the RE/MAX Trademark since at least 1974.  (*Id.*, ¶ 5).  The RE/MAX Network has had continuous presence in the greater Houston area since at least 1979 and San Antonio area since at least 1984.  (*Id.*, ¶ 10).  During this time, RE/MAX and the RE/MAX Network have invested billions of dollars to develop, promote and maintain the RE/MAX Trademark, among other trademarks owned by RE/MAX, in the United States and worldwide.  (*Id.*, ¶ 7).

The RE/MAX Trademark has been used, and continues to be used, on various advertising media including yard signs, business cards, Internet web sites, directional signs, open house signs, hot and cold air balloons, television commercials, billboards, bus stop benches, banners, and other advertising and promotional items.  (*Id.*, ¶ 6).  Brokers and associates in the RE/MAX Network have used the RE/MAX  Trademark in connection with representing either the buyer or the seller over 20 million times in real estate sale transactions in the United States and worldwide, resulting in over two and a half trillion dollars in sales volume from 1973 to present date.  (*Id.*, ¶ 8).  At any given time, there are over 400,000 RE/MAX property listings in the United States, all but a small percentage of which generally display prominently a yard sign that includes the RE/MAX Trademark.  (*Id.*, ¶ 9).

Moreover, it is not disputed that Defendants began using the confusingly similar red-over-white-over-blue sign for real estate brokerage and sales services at least two decades after RE/MAX's use and more than a decade after registration of the RE/MAX Trademark.  (*Id.*, ¶¶ 5,

19).   Accordingly, it is undisputed that RE/MAX has protectable and enforceable rights to the RE/MAX Trademark.

>    **2.**      **Defendants' Use of the Red-White-Blue Signs in Connection with Real Estate Brokerage Services Is Likely to Cause Confusion**

>    **a.**      **Similarity of the Marks**

As evidenced below in a side-by-side comparison, Defendants' sign mimics the RE/MAX Trademark by having three color bands, the top one of which is red, the middle one of which is white, and the bottom one of which is blue.  Moreover, the relative widths of the three bands on Defendants' signs are approximately identical, as they are on the RE/MAX Trademark.

 

Therefore, this factor supports a finding of likelihood of confusion.

>    **b.**      **Similarity of the Services**

It is undisputed that Defendants use their tri-color signs "in connection with real estate brokerage."  (Undisputed Facts, ¶ 25, 17).  Real estate brokerage services are also the services for which RE/MAX holds its trademark registrations.  (*Id.*, ¶¶ 1-3).  It is, therefore, undisputed that the services offered by Defendants under their tri-color sign are identical to the services offered by RE/MAX and registered by RE/MAX in its trademark registrations, *viz.* real estate brokerage services.  Accordingly, this factor supports a finding of likelihood of confusion.

### c.     Similarity of Purchasers

It is undisputed that Defendants market or intend to market their services to the "general public with an interest in purchasing or selling real estate." (Undisputed Facts, ¶ 26). The buyers and sellers of real estate are precisely the domain of purchasers to whom RE/MAX markets its own services under its RE/MAX Trademark. (*Id*., ¶¶ 1-11). It is, therefore, undisputed that the class of purchasers of RE/MAX's services are identical to those targeted by Defendants. Accordingly, this factor supports a finding of likelihood of confusion.

### d.     Similarity of Advertising Channels

It is undisputed that Defendants market and sell, and intend to market and sell, their services "through the general real estate channels of trade." (Undisputed Facts, ¶ 27). Moreover, Defendants advertise their services through "real estate yard signs, brochures, fliers, home listings, and newspaper advertisements" as well as their "publicly available website." (*Id*.). These are precisely the same channels of advertising that RE/MAX has utilized and continues to utilize in promoting its own services under its RE/MAX Trademark. (*Id*., ¶¶ 1-11). Accordingly, this factor supports a finding of likelihood of confusion.

### e.     Intent of the Defendants to Pass Off

Where, as here, Defendants have adopted an infringing mark with the intent of deriving benefit from RE/MAX's reputation, that fact alone may be sufficient to justify the inference that there is confusing similarity. *See American Rice*, 518 F.3d at 332. The Fifth Circuit has held that, although proof of a defendant's intent is not required, "[i]f such intent can be shown … it may provide compelling evidence of a likelihood of confusion." *Id.* Moreover, "one who adopts a mark similar to another already established in the marketplace does so at its peril . . .. All doubts must be resolved against him." *McGraw-Edison Co. v. Walt Disney Productions*, 787

F.2d 1163, 1167 (7th Cir. 1986); *Beer Nuts, Inc. v. Clover Club Foods, Co*., 711 F.2d 934, 941 (10th Cir. 1983).

Here, it is undisputed that Defendants were well aware of RE/MAX and its tri-color trademark long before they decided to offer their competing real estate brokerage services under a confusingly similar mark. First, defendant Miller became a broker of record for defendant Trend Setter after she engaged in real estate brokerage business for several years as a RE/MAX affiliate using the RE/MAX Trademark. (Undisputed Facts, ¶¶ 12-16, 20). Second, defendant Abraham used defendant Miller as his real estate agent while she was associated with a Houston-based RE/MAX affiliate and she marketed Abraham's properties using real estate signs containing the RE/MAX Trademark. (*Id*., ¶ 20). Finally, defendant Abraham, on behalf of Realty, Etc., a predecessor-in-interest of defendant Trend Setter, ordered from a sign vendor real estate yard signs nearly identical to the design later chosen for Trend Setter. The invoice for such order stated "Per Customer Specifications," and referenced a sign with "White background w/ R/M red and blue." (Abraham Depo., pp. 127-128, Abraham Depo. Exhibit 3). The abbreviation "R/M" is commonly used to describe RE/MAX. (Miller Depo., p. 92.). .

Therefore, Defendants' intent to pass off their services as being associated with or approved by RE/MAX is established. Accordingly, this factor supports a finding of likelihood of confusion.

### f.    **Actual Confusion**

As previously held by the Fifth Circuit, evidence of actual confusion will, in almost all cases, result in a finding of likelihood of confusion. *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489, (5th Cir. 1971) "[V]ery little proof of actual confusion would be necessary to prove likelihood of confusion." (*Id*.) On the other hand, "an almost

overwhelming amount of proof would be necessary to refute such proof." *Id.*; *Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 491 (5th Cir. 1992); *Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 597 (5th Cir. 1985). In this Circuit, "a plaintiff may rely on anecdotal instances of consumer confusion, or consumer surveys" in order to show actual confusion. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004); see also *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 376, n. 14 (5th Cir. 2004).

Plaintiff engaged Dr. Robert A. Peterson, a well-respected survey expert from the University of Texas, to measure the level of confusion caused by Defendants' horizontal red-over-white-over-blue sign design among consumers of real estate brokerage services in the Houston metropolitan area. (Peterson Decl., ¶ 6). The double-blind survey included 225 individuals who are currently considering, or have considered in the immediate past, buying or selling a home through a real estate agent or broker. (*Id.*, ¶¶ 7-10). The survey participants were divided into two groups, the first one of which was shown a picture containing Defendants' red-over-white-over-blue sign, while the second, control, group was shown a modified version of Defendants' sign wherein the red-over-white-over-blue color scheme was modified by removing the horizontal red and blue bars. (*Id.*, ¶¶ 9-16). The control group was used to assess survey participant "guessing" and survey data "noise." (*Id.*, ¶ 19).

Over one-quarter (25.3%) of the consumers shown Defendants' unmodified sign believed that the company being promoted by that sign is RE/MAX, or is affiliated or connected with RE/MAX, or would have to get permission from RE/MAX to use the sign. (*Id.*, ¶¶ 18). On the other hand, only a statistically insignificant 2.7% of the control group participants associated the modified Defendants' sign with RE/MAX. (*Id.*, ¶ 20). The 2.7% figure reflects random sampling error. (*Id.*, ¶ 22). Thus, a statistically significant percentage of consumers of the real

estate brokerage services in the Greater Houston area mistakenly associate Defendants' horizontal red-over-white-over-blue signs with RE/MAX.

Defendants did not disclose any expert testimony to rebut the results of this survey. Accordingly, the undisputed consumer survey evidence of actual confusion supports a finding of likelihood of confusion.

### 3. Conclusion

In light of the undisputed evidence submitted above, RE/MAX submits that no genuine dispute of material fact exists as to the likelihood of confusion created by Defendants' red-over-while-over-blue real estate brokerage signs. For this reason, RE/MAX is entitled to a judgment as a matter of law on First, Fourth, and Sixth counts of its First Amended Complaint, as well as on Defendants' First Counterclaim.

## B. Defendant Has Engaged in Unfair Competition under Federal and Common Law

The elements for a finding of unfair competition under 15 U.S.C. § 1125(a) and Texas common law are identical to the elements for establishing trademark infringement. *See Marathon Mfg.*, 767 F.2d at 217 ("As a general rule, the same facts which would support an action for trademark infringement would also support an action for unfair competition."), citing *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg.*, 510 F.2d 1004, 1009-10 (5th Cir. 1975).

As demonstrated above with respect to RE/MAX's claims for trademark infringement, the uncontroverted evidence shows that Defendants are engaging in unfair competition in violation of both federal law and Texas state law. Accordingly, RE/MAX is entitled to a judgment as a matter of law on its federal law (Count III) and Texas common law (Count VII)

claims for unfair competition for the same reasons as set forth above with respect to its claims for trademark infringement.

**C.     Defendant Miller Has Breached Her Agreement with RE/MAX Elite**

Before joining defendant Trend Setter in its infringing activities, defendant Miller was an independent real estate broker associated with RE/MAX Elite, an independently owned RE/MAX franchise.  (*See* Undisputed Facts, ¶¶ 12-14).   Miller entered into an *Independent Contractor Agreement* ("<u>ICA</u>") which, among other things, governed her relationship with RE/MAX Elite and her use of RE/MAX's intellectual property on RE/MAX Elite's behalf.  (*Id.*).  It is furthermore undisputed that Miller's ICA terminated on or about February 28, 2005.  (*Id.*, ¶ 16).  Because she could only use the RE/MAX Trademark on behalf of RE/MAX Elite, upon termination of the ICA, Miller's permission to use the RE/MAX Trademark terminated immediately and automatically.  (*Id.*, ¶ 13).

Upon termination, Miller was obligated under the ICA "neither to infringe upon, use or imitate" any of RE/MAX's distinguishing characteristics, "including, but not limited to, service marks, trademarks, trade names, copyrights, certification marks, designs, slogans, logos, telephone numbers, business cards, lawn signs, color combinations and style, names or other advertising copy now or hereafter displayed, used or becoming a part of the RE/MAX business" as set forth in the ICA.  (*Id.*)  As a broker of record for defendant Trend Setter, Miller has used, and continues to use, a red-over-white-over-blue real estate sign that is confusingly similar to the RE/MAX Trademark, in direct contravention to the provisions of the ICA.  In so doing, Miller has breached the ICA and, for this reason, RE/MAX is entitled to a judgment as a matter of law on its Count VIII.

**D.** **Trend Setter's Federal Trademark Registration No. 3,222,708 Should Be Cancelled**

Section 37 of Lanham Act, 15 U.S.C. § 1119, grants the authority to the courts to order cancellation of trademark registrations. Pursuant to Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), the test for trademark registration is the same "likelihood of confusion" standard as the test for trademark infringement. *See Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1364 (Fed. Cir. 2000); 6 *McCarthy on Trademarks and Unfair Competition* § 23:78. Accordingly, uncontroverted evidence of Defendants' infringing activities described above entitles RE/MAX to a judgment as a matter of law on its claim for cancellation of registration number 3,222,708 (Count IX).

Moreover, RE/MAX is entitled to the relief requested herein because Defendants failed to answer and deny RE/MAX's allegations supporting the claim for cancellation in its First Amended Complaint ("FAC"). Defendants' failure to deny RE/MAX's averments in the FAC related to the cancellation of defendant Trend Setter's U.S. Trademark Registration No. 3,222,708 results in a deemed admission of those averments and, therefore, entitles RE/MAX to prevail as a matter of law on its claim for cancellation. *Pacific Indem. Co. v. Broward County*, 465 F.2d 99, 103 (5th Cir. 1972).

**E.** **RE/MAX's Federal Trademark Registration No. 1,702,048 Should Not Be Cancelled**

In their Count III, Defendants requests cancellation of RE/MAX's U.S. Registration No. 1,702,048 ("RE/MAX Registration") based on Defendants' allegations that the RE/MAX Registration is generic, comprises the flag of the U.S., is not in use, or has been abandoned. (*See* Answer, ¶¶ 105-110). Defendants have the burden of proof on their cancellation claim. *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996) As demonstrated in more detail below, because

Defendants have adduced no evidence in support of any of these theories of cancellation, Defendants cannot meet their burden on Defendants' Count III.

Defendants first seek cancellation of the RE/MAX Registration because it "is generic pursuant to Section 14(3) of the Trademark Act, 15 U.S.C. §1064(3)." (Answer, ¶ 107). In order to prove their claim on this basis, Defendants must show that the public no longer identifies the RE/MAX Trademark with a particular source of services, but instead identifies the mark with a class of services regardless of source. *See*, *e.g.*, *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 544 (10th Cir. 2000). Here, however, Defendants have adduced no evidence that the public perceives the RE/MAX Registration as designating real estate brokerage services in general. In fact, it is clear from Dr. Petersons' survey that the opposite is true. Consumers in significant statistical numbers perceive the RE/MAX Registration as designating real estate brokerage services from those affiliated with the RE/MAX network. (*See* Undisputed Facts, ¶ 30).

Defendants also maintain that the RE/MAX Registration "consists of the colors and the design of the flag of the United States in violation of Section 2(b) of the Trademark Act, 15 U.S.C. §1052(b)." (Answer, ¶ 108). As prohibited by Section 2(b) of the Lanham Act, the term "flag" means "specific designs formally adopted to serve as emblems of governmental authority" and includes the American Flag. *Trademark Manual of Examining Procedure* § 1204; *In re United States Dep't of the Interior*, 142 U.S.P.Q. 506, 507 (TTAB 1964). Trademarks that "incorporate common elements of flag designs such as horizontal or vertical lines, crosses or stars" but that are "readily distinguishable from any of the flags of the nations" are valid. *In re United States Dep't of the Interior*, 142 U.S.P.Q. 506, 507 (TTAB 1964). Here, the analysis is clear. As is plainly evident from the photo of the usage of the RE/MAX Trademark (Undisputed

Facts, ¶ 11), the RE/MAX Registration does not consist or comprise of the American Flag. Defendants offered no evidence that the RE/MAX Registration is the American Flag.

Defendants further maintain that the RE/MAX Registration "has not been used as a trademark or service mark." (Answer, ¶ 109). However, Defendants' allegation does not state any factual basis for this ground, nor has any evidence supporting this claim been adduced. This claim should, therefore, be dismissed.

Finally, Defendants maintain that RE/MAX Registration has been abandoned due to nonuse or and/or mutilation by its owner." (Answer, ¶ 110). Section 45 of the Lanham Act, 15 U.S.C. § 1127 provides that a

> mark shall be deemed to be "abandoned" … When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

The party asserting abandonment of trademark must prove discontinuance of use of mark, and intent not to resume use within reasonably foreseeable time in future. *Eh Yacht, LLC v Egg Harbor, LLC*, 84 F.Supp.2d 556 (D.N.J. 2000). Since abandonment is in nature of forfeiture, both of these criteria must be strictly proved, which means that abandonment must be proved by clear and convincing evidence. (*Id.*; *see also Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). Defendants have adduced no evidence in this litigation that RE/MAX has discontinued use of the RE/MAX Registration.

## VII.  <u>CONCLUSION</u>

The uncontroverted evidence of actual consumer confusion arising from Defendants' use of their red-over-white-over-blue signs to promote their real estate brokerage services entitles

RE/MAX to a judgment as a matter of law on the issues of trademark infringement, unfair competition, and cancellation of Defendants' confusingly similar U.S. Trademark Registration No. 3,222,708. Similarly, lack of any evidence supporting Defendants' counterclaim for cancellation of RE/MAX's U.S. Trademark Registration No. 1,702,048 entitles RE/MAX to a judgment as a matter of law on that claim.

Upon entry of judgment on RE/MAX's behalf as requested herein, RE/MAX respectfully requests that a trial be set to permit evidence on the amount of monetary damages and to enter a permanent injunction restraining Defendants from further infringement of the RE/MAX Trademark and any mark confusingly similar thereto.

WHEREFORE PREMISES CONSIDERED, Plaintiff RE/MAX International, Inc. respectfully requests that the Court grant its Motion for Partial Summary Judgment in all respects and that it be granted all other relief, in law and equity, to which it is entitled. A proposed Order is submitted herewith.

Respectfully submitted on February 23, 2009.

/Anthony F. Matheny/         
Anthony F. Matheny
Texas State Bar No. 24002543
Greenberg Traurig LLP
1000 Louisiana St., Suite 1800
Houston, Texas 77002
Phone: (713) 374-3583
Fax: (713) 754-7583

ATTORNEYS FOR PLAINTIFF,
RE/MAX INTERNATIONAL, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2009, a true and correct copy of the foregoing Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment was electronically filed using the Court's ECF service which will serve it on all registered attorneys of record, including the following:


Mayur Patel
Hester & Patel, P.C.
14511 Falling Creek Drive, Suite 403
Houston TX 77014
mpatel@hesterpatel.com

Erik M. Pelton
ERIK M. PELTON & ASSOCIATES, PLLC
P.O. Box 100637
Arlington, VA 22210
emp@tm4smallbiz.com


/Anthony F. Matheny/
Anthony F. Matheny