**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| RE/MAX International, Inc., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TREND SETTER REALTY, LLC, )<br>a Texas limited liability company; )<br>)<br>PAVNOUTY ABRAHAM, an individual; )<br>)<br>and )<br>)<br>DEBORAH N. MILLER, an individual )<br>)<br>Defendants. )<br>) | **CIVIL ACTION NO. 4:07-CV-02426** |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# EXHIBIT D

REVISED

## INDEPENDENT CONTRACTOR'S AGREEMENT
(Texas-Version 2002)

THIS AGREEMENT, ("Agreement"), which term shall include all addenda attached hereto and approved by RE/MAX of Texas ("Regional"), is made and entered into this 15th day of Feb, 2003 ("Effective Date") by and between James H. Keenan ("Licensee"), James H. Keenan ("Sponsoring Broker") and Debbie Miller ("Contractor") upon the terms and conditions stated herein. For and in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

12171

1. **SUMMARY OF KEY TERMS AND FEES**

   A. Date of this Agreement ("Effective Date"): Feb. 15, 2003
   B. Expiration date of Agreement: FEb. 14, 2004 (one year after Effective Date)
   C. Regional: RE/MAX of Texas, the Regional Licensor.
   D. Office Name: RE/MAX Elite
   E. Licensee's and Contractor's Office Location:
      11319 Fountain Lake Drive, Stafford, TX 77477
   F. Security Deposit: $_____, but no less than Five Hundred Dollars ($500.00)
   G. Initiation Fee: One Thousand Dollars ($1,000.00).
   H. International Dues: Currently Two Hundred and Eighty and No/100 Dollars ($280.00); however, the International Dues is subject to change pursuant to Regional Policy Directive.
   I. Administrative Fee: $_____, but no less than Six Hundred Dollars ($600.00) per month (if no amount is filled in, the Administrative Fee shall be $600.00).
   J. Ceiling on Monthly Fixed Expenses: $ 750.00
   K. Variable Shared Expenses: See Monthly Bill.
   L. Variable Personal Expenses: See Monthly Bill.
   M. Institutional Promotional Fee: One Hundred Dollars ($100.00) per month.
   N. International: RE/MAX International, Inc.
   O. Attached Addendum (check one, if applicable and made available at the discretion of the Licensee):
      [ ] RAPP Standard
      [ ] RAPP Lo Risk

2. **GENERAL ACKNOWLEDGMENTS.** The parties hereby generally acknowledge that Licensee operates a RE/MAX® real estate brokerage office in the State of Texas pursuant to the terms and conditions of a License Agreement with Regional. The parties further acknowledge that it is the mutual advantage of Licensee, Sponsoring Broker, and Contractor to enter into this Agreement and for Contractor to operate it's real estate business under the RE/MAX trade name upon the terms and conditions hereinafter set forth.

3. **INDEPENDENT CONTRACTOR STATUS.** Contractor shall be an independent contractor for all purposes and shall be free to dispose of such portion of his time and efforts as he sees fit. Contractor shall have control over the method by which Contractor performs his duties and shall have no mandatory duties except those set out in this Agreement, the Licensee's Office Policy and Procedures Manual, Regional Policy Directives and regulations, and applicable laws. Contractor hereby acknowledges Contractor is responsible for payment of all Contractor's own federal income taxes and self-employment taxes (FICA) together with any and all corresponding state, county and local taxes. Contractor is responsible for obtaining and maintaining all insurance Contractor is required to have under this Agreement as well as any other insurance Contractor deems appropriate. Contractor represents that Contractor is licensed as a salesperson or broker in good standing with The Texas Real Estate Commission. In the event a Court or arbitrator should find that Contractor has entered into an employer/employee relationship with Licensee, (which relationship

Licensee, Broker and Contractor expressly deny). Contractor hereby gives Licensee notice that Contractor elects not to be covered by any Worker's Compensation Policy to which Licensee may have subscribed to and Contractor hereby waives his rights in common law or under any Statute to recover damages for any injuries.

4. **TERM AND RENEWAL.**

    A. Unless otherwise provided for herein, the term of this Agreement shall be for one (1) year commencing on the Effective Date. This Agreement may be renewed for additional one year periods (the "Renewal Period") provided Contractor has complied with all the terms and conditions of this Agreement and executes the form of Renewal Addendum or Independent Contractor Agreement required by Regional at the time of such Renewal. Contractor acknowledges that the terms and conditions of such renewal may be different then the terms and conditions of this Agreement.

    B. If Contractor does not wish to renew this independent contractual relationship, Contractor must notify Licensee in writing at least sixty (60) days prior to the expiration of the term of this Agreement, provide Licensee a complete list of all outstanding bills and expenses incurred by Contractor, and provide Licensee with a written summary of the current status of all transactions that Contractor is working on at the time of expiration. If Contractor gives less than sixty (60) days written notice of his intent not to renew, this Agreement shall terminate on expiration date and Contractor shall pay, as liquidated damages, all applicable fees, dues, expenses and charges under this Agreement through sixty (60) days following the date of Contractor's actual notice to Licensee. Licensee may also pursue any and all other rights or remedies Licensee has under this Agreement and applicable law.

5. **LICENSEE'S RESPONSIBILITIES.** Licensee agrees that in consideration of the fees and shared expenses to be paid by Contractor under this Agreement, Licensee shall make available to Contractor, for Contractor's non-exclusive use, administrative support, an office or desk space, a shared reception area, and access to listings, forms, advertising, telephone and other forms of communication. Licensee shall submit to Contractor a monthly statement with a complete itemization reflecting Contractor's pro rata share of expenses, and the fees and financial obligations due Licensee by Contractor.

6. **CONTRACTOR'S RESPONSIBILITIES.**

    A. Contractor agrees that Contractor shall act as an independent real estate salesperson with respect to real estate matters including, but not limited to, obtaining or entering into listings, buyer agency agreements, referral agreements, cooperative sale arrangements, rental or management agreements, or any interest therein or providing services in relation thereto (hereinafter collectively "Real Estate Service Agreements"), for all types of interest in and to real estate, and soliciting sellers, purchasers, lessors, lessees and the like, for Real Estate Service Agreements and any interest therein. Contractor agrees that all Real Estate Service Agreements or any interest therein shall be taken in the name of Licensee by and through Sponsoring Broker within one (1) business day after such Real Estate Service Agreements have been accepted by Contractor. Said Real Estate Service Agreements shall become and remain the exclusive property of Licensee by and through Sponsoring Broker; however, upon proper termination and/or expiration of this Agreement, Contractor's Real Estate Service Agreements shall remain with Licensee by and through Sponsoring Broker subject to Section 8 and 9. All Real Estate Service Agreements may be shared with all other Contractors of Licensee, and Contractor shall have the right to utilize the Real Estate Service Agreements similarly given to Licensee by other associates. All fees earned by Contractor in connection with the sale, purchase, lease, rental, locating or management of real estate and all other sums earned by or through the efforts of Contractor shall be payable to and shall remain the sole and exclusive property of Licensee through Sponsoring Broker; and Contractor shall have no direct interest whatsoever in any such fees or the collection thereof and shall look solely to Licensee for payment of sums due Contractor pursuant to the terms of this Agreement. Contractor shall not assign any interest from fees due hereunder. The parties agree hereto and stipulate that substantially all compensation received by Contractor shall be directly related to sales, Real Estate Service Agreements, and the consideration derived there from.

    B. Contractor shall reimburse Licensee for any referral fees, shares of commissions or other costs that Licensee pays in good faith relying on Contractor's statements or silence or as a result of judgments, arbitration awards, mediations or other established entitlements. These rights to reimbursement and recovery shall survive termination and/or expiration of this Agreement.

    C. Contractor shall be responsible for all his personal expenses, including, but not limited to, license and membership fees, insurance costs or educational endeavors, which may result from or be required as a result of his being licensed by the Texas Real Estate Commission and/or associated with Licensee.

    D. Contractor shall maintain at his expense automobile and errors & omissions insurance in such amounts and terms as required by Licensee and Regional. All policies of insurance to be maintained by Contractor shall contain a separate endorsement naming Licensee, Regional and RE/MAX International, Inc. ("International") as additional insureds and shall not be subject to modification, or cancellation, except on ten (10) days written notice to Licensee, Regional and International. Contractor shall provide Licensee copies of the current certificates of insurance and copies of the current policies.

    E. Contractor shall abide by all federal, state and local laws and regulations, the rules and regulations of ethics, conduct and procedure established by the National Association of REALTORS®, the Texas Real Estate Commission, the Texas Association of

REALTORS® and the local board and/or association of REALTORS®. Contractor shall maintain membership in a Board and/or Association of REALTORS®, where available, comply with its rules, and participate in local Multiple Listing Services (MLS), where available.

   F. Contractor agrees to adhere to and abide by all the rules, regulations and policies of Regional. Contractor acknowledges that adherence to such rules, regulations and policies is an integral part of the RE/MAX System ("System") and a material consideration for execution of this Agreement. Contractor acknowledges that Regional may amend the rules, regulations and policies at any time and agrees to abide by such amendments.

   G. Contractor represents that Contractor and anyone else within Contractor's control has never been convicted for, or received deferred adjudication for, any felony, any crime involving violence, any crime involving the physical harm to another, or any crime of moral turpitude.

   H. Contractor agrees to maintain and operate Contractor's business from Licensee's office, except as otherwise permitted by Regional Policy Directive. Contractor agrees not to disrupt the System or Licensee's operation or office. Contractor agrees to abide by all office policies and procedures of Licensee and the decisions and rulings of the local Licensee Advisory Council.

   I. Contractor agrees not to hire, employ, contract with or for, retain, license, sponsor for license or hold the license of any other real estate salesperson except as permitted by Regional policy directive.

   J. Contractor <u>agrees to strictly adhere to the quality control standards and trademark standards established by Regional</u>, including but not limited to the requirements listed in Exhibit <u>A</u> attached hereto. Contractor agrees to purchase supplies, signs and other items that use or incorporate the RE/MAX trade name or trademark only from approved suppliers to insure protection of the RE/MAX trade name, trademarks and service marks.

   K. Contractor acknowledges that Licensee has the right to establish the commissions or range of commissions charged on Real Estate Service Agreements obtained by Contractor and for the services of sales force. Subject to such right, Licensee, hereby authorizes Contractor to negotiate or to otherwise independently establish the commission to be paid Licensee on a transaction-by-transaction basis on all agency relationships, referrals and cooperative sales procured by Contractor. Provided, however, Contractor is not authorized to advertise or publicly announce any commission rate or rates, rebates or similar "specials" or discounts. Contractor is also not authorized to enter into any discussion, agreement or understanding with any other broker or agent regarding commissions, except for necessary discussions regarding the amount of compensation to be paid or earned for a referral or for cooperation on the sale of a specific property involving the same broker or agent. Neither Regional nor International set or suggest the commissions to be charged, or the split of any commissions with the cooperating real estate salespersons or brokers.

7. **CONTRACTORS FINANCIAL OBLIGATIONS.**

   A. **Security Deposit.** Contractor shall pay the security deposit as defined in <u>Section 1</u> above to secure the full and faithful performance of Contractor's obligations hereunder and to insure the return to Licensee, upon termination or expiration of this Agreement, all materials, plans, programs, documents, manuals, keys, signs, business cards, and the like. Licensee shall hold the Security Deposit without obligation to pay interest, and with permission to use the Security Deposit while in its possession as operating capital. Should Contractor be consistently late in paying his monthly financial obligations to Licensee; or, should Contractor request Licensee to purchase extraordinary quantities of supplies, Licensee, at its option, may require Contractor to make additional deposits to the Security Deposit. Upon receipt of all outstanding bills of Contractor and after the expiration of sixty (60) days after termination or expiration of this Agreement, if Contractor has performed all of his obligations hereunder, the Security Deposit shall be returned to Contractor. Contractor shall have no right to offset the Security Deposit against his account due Licensee, unless otherwise agreed to by Licensee in writing.

   B. **Initiation Fee.** As consideration for joining Licensee's office, upon the execution of this Agreement, Contractor shall pay to Licensee, the initiation fee as defined in <u>Section 1</u> above, which is <u>non-refundable and nontransferable.</u>

   C. **International Dues.** Contractor agrees and promises to pay the International dues in the amount, manner and method of payment governed by Regional Policy Directive or as otherwise required by Regional.

   D. **Administrative Fee.** Contractor shall pay, without deduction or offset the monthly Administrative Fee due Regional in the amount as defined in <u>Section 1</u> above (which amount is no less than $600.00) on or before the due date indicated in any invoices delivered by Licensee or Regional. Unless Regional directs some other manner of payment, the Administrative Fee shall be due and payable by Contractor to the Licensee as Regional's agent for collection and reporting services. This fee may be adjusted from time to time by Regional Policy Directive and Contractor agrees to pay any such adjusted amount.

   E. **Fixed Shared Expenses.** Contractor shall pay Contractor's pro rata portion of shared expenses (the "Fixed Shared Expenses"), which expenses shall be deemed to include without limitation, rent, office overhead, furniture, utilities, local telephone

service, secretarial and clerical expenses, janitorial services; ad valorem and property taxes and the like. Payment of these expenses does not entitle Contractor to any right, title or interest of any kind whatsoever in the furniture, furnishing, fixtures, equipment or facilities. Fixed Shared Expenses for each month shall be determined by Licensee, and Licensee will furnish Contractor with a monthly itemization of the same. In order to assist Contractor and to reduce the initial front-end costs of Contractor, there shall be a ceiling on the monthly Fixed Shared Expenses proportionately shared by Licensee's contractors in the amount as defined in Section 1 above; however, at Licensee's option, should the total Fixed Shared Expenses exceed the total monthly cap, Contractor agrees that Licensee may proportionately charge all Licensee's contractors the difference as a Variable Shared Expense as defined below. After the "capital recovery point", as defined in Section 7 I, is reached, all Fixed Shared Expenses shall be determined by Licensee and proportioned equally among Contractors. Fixed Shared Expenses shall be due and payable on the last day of each month or as otherwise directed. At Licensee's option, Fixed Shared expenses may be billed monthly in advance.

F. **Variable Shared Expenses.** Licensee may, at its option, include a separate category called "Variable Shared Expenses", which are other additional expenses requested by a majority of the Contractors then under contract with Licensee, and/or required for the proper management of the real estate brokerage office. Such Variable Shared Expenses shall be prorated equally among Contractors then under contract with Licensee. Licensee will present to Contractor an additional bill for such Variable Shared Expenses, which Contractor hereby promises to pay and which shall be due and payable on or before the last day of the month in which they were incurred or as otherwise indicated on such bill.

G. **Variable Personal Expenses.** In addition to the services provided above, Contractor may avail himself of certain additional services and materials which include, but are not limited to: long distance telephone services, copying and reproduction services, advertising and promotional brochures, personalized stationary, postage and fax machines, property signs for his listing, such accident, sickness, health and life insurance benefits and programs as may be made available by Licensee to Contractor on an optional basis, rental of calculating, accounting, bookkeeping, or computer equipment, and other services and materials as are made available by Licensee at such rates and on such terms as established by Licensee. Licensee will present Contractor with an additional itemized bill for the Variable Personal Expenses incurred by or on behalf of Contractor during the prior thirty (30) day period, or part thereof. Contractor shall pay such Variable Personal Expenses without deduction or offset on or before the last day of the month in which they were incurred by Contractor or as otherwise indicated in Licensee's bill.

H. **Institutional Promotional Fund.** Contractor agrees to pay, without deduction or offset as a personal expense, the Promotional Fee as defined in Section 1 above, which shall be remitted to the RE/MAX Institutional Promotional Fund. The payments shall be made at the same time the regular monthly bill of Contractor becomes due and payable. This fee may be adjusted from time to time by Regional Policy Directive and Contractor agrees to pay any such adjusted amount.

I. **Capital Recovery Point.** Capital Recovery Point is defined as that point in time when the total of all "fixed shared" payments received by Licensee from all of its Contractors since its first day of business equals the total amount of money expended and capital invested by Licensee (except the License Fee) since its first day of business for what are considered Fixed Expenses ("Recapture of Licensee's front end investment"). Licensee agrees to collect "fixed sum" payments from the Contractors in the early stages of its operation in order to relieve Contractor from having to immediately bear a disproportionate amount of the Fixed Expenses, which during the early stages, are advanced by Licensee. After Licensee has reached its Capital Recovery Point, Licensee may initiate an actual cost billing system, which includes the Administrative Fee and the Institutional Promotion Fund Fee.

J. **Fee Adjustments.** Unless otherwise stated herein, all fees may be adjusted at the end of the term of this Agreement by Licensee or at anytime by Regional. Contractor shall pay, without deduction or offset, all monthly fees described in Section 7, Subsection A-H herein on or before the date indicated in Contractor's invoice.

K. **Delinquent Payments by Contractor.** If Contractor is delinquent in the payment of his monetary obligations due Licensee and/or Regional, in addition to Licensee's other rights under this Agreement or applicable law including Licensee's rights to increase the amount of the Security Deposit, Licensee may require Contractor to pay his financial obligations on a monthly basis, in advance, including a monthly estimate of Variable Personal Expenses.

L. **Direct Billing of Contractor by Regional.** Regional reserves the right to bill Contractor directly for the Administrative Fee and the Institutional Promotional Fee. Additionally, direct billing by Regional may require payment by bank draft or wire transfer or by such other form of payment as reasonably required by Regional.

8. **TERMINATION**

A. **TERMINATION WITH CAUSE.** Unless otherwise stated herein, Contractor agrees that Licensee has the right to terminate this Agreement immediately and without prior notice and pursue any and all remedies available to Licensee upon the occurrence of any of the following events:

   1. Contractor breaches any term of this Agreement or any of the regulations, policies or supplements thereto established by Regional and/or Licensee.

2. Contractor exposes Licensee to potential liability or is likely to adversely affect the reputation or image of Licensee, other RE/MAX offices, Regional, International, or the RE/MAX name and trademarks.

3. Contractor fails to maintain Contractor's license as a salesperson or broker with The Texas Real Estate Commission in good standing (regardless of whether such license is terminated or suspended).

4. Contractor is declared bankrupt or insolvent, or makes an assignment for the benefit of creditors or has a receiver appointed or has any proceedings commenced by or against Contractor under the Federal Bankruptcy Act.

5. Contractor violates Section 6 subsection G (criminal history) or has his license suspended or revoked by the Texas Real Estate Commission.

6. Contractor has a judgment rendered against him that is not paid in full within thirty (30) days from the date of rendition, or has a garnishment or sequestration or other writ issued against him by a Court of competent jurisdiction.

Notwithstanding the termination of this Agreement, Contractor acknowledges that termination under this provision shall not relieve Contractor of any monetary obligations due Licensee and Licensee may pursue any and all remedies available to Licensee under this Agreement or applicable law.

B. **TERMINATION WITHOUT CAUSE.**

1. Either party may, without cause, terminate this Agreement at any time upon the giving of sixty (60) days advance written notice to the other party. However, Contractor shall only have the right to terminate this Agreement without cause if all of the following requirements are met: (a) at least sixty (60) days before Contractor intends to terminate this Agreement, Contractor shall submit to Licensee his written notice of termination with a complete list of all outstanding bills and expenses incurred by Contractor, and (b) on or before the date of termination, Contractor shall provide Licensee with a written summary of the current status of all transactions that Contractor is working on at the time of termination. During the sixty (60) day notice period, Contractor shall continue to be responsible for the payment of Contractor's monthly bill as per this Agreement, even if Contractor ceases the performance of Contractor's duties at Licensee's place of business.

2. If Contractor fails to comply with the requirements under this Section, Licensee may pursue any and all other rights or remedies Licensee has under this Agreement and applicable law including, but not limited to, requiring Contractor to pay all fees due and owing under this Agreement through the expiration of the term of this Agreement as stated herein.

C. **EFFECT ON COMMISSIONS.** Licensee agrees that Contractor is entitled to receive any commission on real estate transactions which were due under any Real Estate Service Agreements prior to any termination or expiration date and such commission shall be paid to Contractor upon the closing and funding of any such transaction and the complete compliance by Contractor of all obligations under this Agreement upon termination or expiration. Payments of commissions to Contractor shall be subject to Sections 6, 8, and 9 of this Agreement. The effect of termination or expiration of this Agreement on pending Real Estate Service Agreements procured by Contractor (and under which payments were not yet due) and Contractor's entitlement to fees, commissions or other compensation not received by Licensee as of the effective date of termination or expiration shall be determined in accordance with the policies and practices of Licensee then in effect.

D. **TRANSFERS BETWEEN RE/MAX FRANCHISEES.** If Contractor's license is transferred to another licensee of Regional, in addition to meeting the condition to terminate this Agreement as set forth in this Section, Contractor must pay to Regional a Processing Fee of $250.00, and submit a Status Change Form to Regional within three (3) days of the date of transfer to consummate the transfer. Prior to such transfer, Contractor agrees to pay all prior monetary obligations due Licensee and Regional and meet all reporting requirements from Contractor to Licensee and from Licensee to Regional. Notwithstanding anything contained herein to the contrary, Licensee and Contractor agree, acknowledge and represent that Regional shall have no responsibility to enforce the obligations of Licensee or Contractor to the other under this Agreement or otherwise. Licensee and Contractor expressly represent that they will not rely upon or request the assistance of Regional to enforce either of their rights or remedies under this Agreement against the other and assume all responsibility with respect to the enforcement of such rights or remedies against the other. Licensee and Contractor hereby jointly and severally indemnify Regional from any and all claims, losses or damages associated with either party's request to enforce its or the other's rights or remedies under this Agreement or otherwise.

9. **NONPAYMENT DEFAULT AND REMEDIES.** In the event Contractor does not pay all of his financial obligations imposed by the terms of this Agreement as set forth in Section 7, in addition to Licensee's other rights under this Agreement and applicable law, Licensee may, but is not obligated to, terminate this Agreement without notice and Contractor shall thereupon cease all activities with respect to Contractor's real estate business and Licensee shall initiate the transfer of Contractor's license to another sponsoring broker designated by Contractor or to the Texas Real Estate Commission. Additionally, Licensee may, and is hereby authorized to, deduct all or any part of such past due fees, late charges, and expenses from commissions payable to Contractor and/or forfeit all or


part of Contractor's Security Deposit. If there are insufficient commissions payable to off-set amounts due Licensee and/or if Contractor fails to pay Licensee by the last day of each month or as otherwise indicated on the statement, then Contractor shall be assessed: (a) a late payment charge to compensate Licensee for the additional administrative costs and expenses incurred in handling overdue payments which may, at Licensee's option, consist of (i) a one-time monthly late charge, (ii) an escalating daily late charge, or (iii) a combination of both; and (b) simple interest on all amounts owed but unpaid at the rate of 18% per year, or if such rate exceeds the highest rate permitted under applicable law, then at the highest rate legally permitted. Contractor's payments shall be applied in the following order: First, to the Administrative Fee due Regional, then to the Promotional Fee, then to payment of late charges, then to interest, then to replenish all payment of or any part of the Security Deposit and then to other unpaid fees.

10. **INDEMNIFICATION.** Regional and Licensee shall not be liable to Contractor for any expenses incurred by Contractor, nor shall Contractor have authority to bind Licensee, Regional or International by any promises or representations, unless specifically authorized in advance and in writing to do so. Contractor agrees to indemnify and hold harmless Licensee, Regional and International and their respective affiliates, partners, officers, shareholders, directors, agents, employees, successors and assigns from and against all fines, penalties, levies, suits, proceedings, claims, actions, or causes of action of any kind and of whatsoever nature, including but not limited to all costs, court costs, litigation expenses and attorneys' fees (including attorneys' fees on appeal) arising from growing out of, in connection with or incidental to Contractor's activities and operation of a real estate service business. Licensee and Contractor represent to Regional that, in the event that any amounts are owed by Contractor to Licensee or by Licensee to Contractor, each will pursue their respective rights and remedies under any agreements between themselves or applicable law and will not rely upon or seek any action by Regional to collect such sums. It is expressly recognized by Licensee and Contractor that Regional has no obligation to collect any sums due from either party to the other. Licensee and Contractor, individually and jointly and severally, hereby indemnify and hold harmless Regional and International and their respective affiliates, parents, officers, shareholders, directors, agents, employees, successors and assigns from and against all fines, penalties, levies, suits, proceedings, claims, including but not limited to, all costs, court costs, litigation expenses and attorneys' fees (including attorneys' fees on appeal) arising from, growing out of, in connection with or incidental to Contractor or Licensee, this Agreement, any new Independent Contractor Agreement or Renewal Addendum, as the case may be, which may be signed by Contractor, Contractor's performance with Licensee or any amounts due Licensee by Contractor. In case any action or claim to which Licensee, Regional or International are entitled to indemnification shall be brought or asserted in anyway against Contractor or Licensee, as the case may be, Contractor and Licensee agree to immediately notify Regional and Licensee (if applicable) of the same and furnish Regional and Licensee with all relative information. Licensee, Regional and International shall be entitled to participate in, and to the extent that they wish, to assume the defense thereof. If Regional or International is joined in a suitor proceeding filed against Contractor or Licensee, Regional and/or International may file a cross-action against Contractor and Licensee for contribution or indemnity. Contractor agrees to remit directly to Regional and/or International when invoiced any reimbursement due Regional or International, as the case may be, for attorneys' fees and expenses as a result of this indemnity. Maintenance of any insurance required by this Agreement shall not relieve Contractor or Licensee of liability or duty under this Section.

11. **RELATIONSHIP WITH REGIONAL.** Certain provisions of this Agreement inure to the direct benefit of Regional, by way of example but not by way of limitation: (a) Contractor's obligations relative to certain insurance requirements specified in Section 6, Subsection D; (b) Contractor's obligations to provide a certain quality of real estate service as specified in Section 6, Subsections E-I; (c) Contractor's protection of and adherence to Regional Policy Directives and specifically those dealing with the RE/MAX trademarks as more specifically noted in Section 6; (d) Contractor's financial obligations specified in Section 7; and (e) the indemnification provisions of Section 10. To the extent that the foregoing examples and any other provisions of the Agreement inure to the benefit of Regional, Regional shall be deemed to be a third party beneficiary of this Agreement and specifically reserves all rights, remedies and benefits there under. Any breach of this Agreement or the policies and procedures of Licensee, Regional and/or International by Contractor could severely damage Licensee, Regional or International and the goodwill associated with the System. Therefore, it is expressly agreed that Licensee or Regional could, jointly or severally, maintain any action or claim against Contractor that might arise out of or be incidental to this Agreement. Notwithstanding the foregoing, Regional and/or International do not retain control over or have the right to supervise or direct the day to day activities of Contractor who shall remain at all times an Independent Contractor of Licensee as more particularly provided in Section 3.

12. **RESTRICTIONS ON SUBSEQUENT BUSINESS ACTIVITY.**

   A. Contractor shall not after the termination or expiration of this Agreement, for any reason, use or permit the use of, to his own advantage or the advantage of any other person or entity, any information gained from the files or business of Licensee. Contractor agrees that the sales plans, programs, materials, manuals, forms, contracts, agreements, brochures, yard signs, telephone numbers, all online presence, including but not limited to e-mail, website and business cards, and other training, listing and sales materials provided hereunder by Licensee are the property of Regional and/or Licensee and shall be immediately returned to Licensee and shall not be utilized in connection with any business hereafter carried on by Contractor, whether alone or in conjunction with other individuals or entities, or otherwise in any way be divulged by Contractor to any third parties. Contractor agrees to not directly or indirectly, for a period of one year after termination or expiration of this Agreement, solicit, recruit, attempt to solicit or recruit, or assist anyone in an attempt to solicit or recruit, for employment or for independent contract in the State of Texas, any other Sales Contractor affiliated with RE/MAX for a competing real estate organization/business.

B. Contractor acknowledges that he has obtained knowledge of confidential matters, trade secrets, techniques, accounting procedures and other methods developed by Regional and/or International through and in the System, which are owned by Regional and/or International and are necessary and essential to the operation of the RE/MAX System without which information the Contractor could not efficiently, effectively, and profitably operate or conduct his business. Contractor further acknowledges that such confidential information was unknown to him prior to execution of this Agreement and that the methods developed by Regional and/or International for the real estate service operation are unique and novel to Regional and/or International. Contractor acknowledges Regional's and/or International's exclusive right to its real estate systems, its method of operation and its distinguishing characteristics, including, but not limited to, service marks, trademarks, trade names, copyrights, certification marks, designs, slogans, logos, telephone numbers, business cards, lawn signs, color combinations and style, names or other advertising copy now or hereafter displayed, used or becoming a part of the RE/MAX business. Contractor agrees neither to infringe upon, use or imitate said system or any of the above distinguishing characteristics after termination or expiration of this Agreement.

C. Because of the difficulty of measuring economic loss to Licensee, Regional and/or International as a result of the breach of any of the covenants of this Section, and because of the immediate and irreparable harm that such a breach would cause Licensee and/or Regional for which they would have not adequate remedy, Contractor agrees that any of the foregoing covenants may be enforced by Licensee and/or Regional by injunction and restraining order. In the event Licensee and/or Regional are required to employ an attorney to enforce any of the covenants of this Section, or to institute legal proceedings, incident to such enforcement, then Contractor expressly covenants and agrees to pay, in addition to all other sums to which Contractor may be found liable, reasonable attorneys' fees, court costs, and litigation expenses incurred by Licensee and/or Regional.

13. **MISCELLANEOUS PROVISIONS.**

A. Any notice required to be given pursuant to this Agreement shall be given in writing and delivered in person or by Certified Mail, Return Receipt Requested, postage prepaid, to the party entitled to receive notice at the address given herein. Notice so mailed shall be deemed given as of the time of deposit in the United States mail.

B. No change or modification of this Agreement shall be valid unless such change or modification is approved, in writing and in advance, by Regional.

C. It is the intention of the parties hereto to comply with all applicable usury laws (now or hereto enacted). Nothing contained herein shall in any way imply that a borrower-lender relationship has been created. Notwithstanding anything contained herein to the contrary, in no event shall this Agreement require the payment or permit the collection of interest in excess of the maximum amount permitted by law. If any such excess interest is contracted for, charged or received under this Agreement, under any circumstances or as a result of any event then the provisions of this section shall govern and control and any such excess interest which may have been collected, received or contracted for, shall, at Licensee's option, be either applied as a credit against any unpaid sums due and owing by Contractor to Licensee or refunded by Licensee to Contractor.

D. This Agreement shall be governed and construed in accordance with the laws of the State of Texas. All references hereto to the "State" shall be to the State of Texas.

E. Should any part of this Agreement, for any reason, be declared invalid, such decision shall not affect the validity of any remaining portion of this Agreement. Contractor, whether male or female, is herein called Contractor and is referred to by the masculine singular personal pronoun.

F. This Agreement may not be assigned by either party without the prior written consent of Regional. Contractor acknowledges that Licensee may assign contact with prior written consent of Regional.

G. Contractor agrees to be responsible for and hereby promises to pay any and all costs including court costs, litigation expenses, and attorneys' fees incurred by Regional and/or Licensee in enforcing any part of this Agreement or in the collection, or attempting to collect, amounts due and owing under the terms of this Agreement.

H. If Contractor conducts its real estate business in a capacity other than as an individual, Contractor agrees to abide by all Rules and Regulations of the Texas Real Estate Commission as well as all other State and Federal laws and agrees to execute the individual guarantee below. Contractor further agrees that it owns legal and beneficial title to 100% of all classes of stock issued by Contractor's corporation, Limited Liability Company and/or partnership. Any sale by Contractor of all or any shares of stock by Contractor shall be deemed an immediate default under this Agreement and shall permit Licensee to immediately terminate the Agreement without notice.

14. **DISPUTE RESOLUTION.** The parties shall attempt to resolve any matters in dispute regarding this Agreement by non-binding mediation before a neutral mediator agreeable to the parties. The parties shall use best efforts to schedule and conduct such mediation within thirty (30) days of notice of any such dispute. Unless otherwise mutually agreed, neither party shall be required to mediate claims which are the basis of a request for injunctive relief or a claim related to Licensee's right to terminate this Agreement

pursuant to Section 8 or 9, or disputes regarding the filing of any report required by Licensee or Regional or any violations of local Board or Association rules and the rules and regulations of the Texas Real Estate Commission; nor shall any obligation to mediate preclude either party from seeking temporary restraining orders, preliminary injunctions or other procedures in a court of competent jurisdiction to obtain interim relief when deemed necessary to preserve the status quo or prevent irreparable harm or injury pending resolution by mediation of the actual dispute between the parties.

15. **DISCLAIMER.** THE SUCCESS OF CONTRACTOR IN A RE/MAX REAL ESTATE SERVICE BUSINESS IS SPECULATIVE AND WILL DEPEND ON MANY FACTORS INCLUDING, TO A LARGE EXTENT, CONTRACTOR'S INDEPENDENT BUSINESS ABILITY. CONTRACTOR HAS NOT RELIED ON ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED BY LICENSEE, REGIONAL OR INTERNATIONAL, AS TO HIS POTENTIAL SUCCESS IN THE BUSINESS CONTEMPLATED HEREBY.

16. **COPYRIGHT.** This form has been promulgated by Regional. It is copyrighted by Regional and the unlawful and unauthorized use of the same is strictly forbidden by law. However, neither Licensee nor Contractor shall request or rely on any interpretation from Regional with respect to the terms of this Agreement; the parties acknowledge that each has executed this Agreement using their own business discretion and without relying on any representations or interpretations from Regional.

17. **ACKNOWLEDGMENT BY REGIONAL.** The parties acknowledge that this Agreement shall have no force or effect until Regional receives this Agreement, fully executed by all parties, as reflected by Regional's acknowledgment below.

IN WITNESS WHEREOF, THE PARTIES HERETO, AFTER READING THIS ENTIRE AGREEMENT, CONSISTING OF TEN (10) PAGES, HAVE EXECUTED THIS AGREEMENT THE DAY AND YEAR WRITTEN ABOVE, IN TWO (2) ORIGINALS.

"CONTRACTOR"
X _Deborah N. Miller_
Name (Print) _Debbie Miller_
Address: _9910 McKeever Ln._
_Mo. City, TX 77459_
TREC #: _406192_
SS #: _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_
E-mail: _dmiller@argolink.net_

"LICENSEE"
X _James H. Keenan_
Office Name (Print) _James H. Keenan_
Address: _11319 Fountain Lake_
_Stafford, TX 77477_
E-mail: _jk11319@aol.com_

"SPONSORING BROKER"
X _James H. Keenan_
Name (Print) _James H. Keenan_
Address: _11319 Fountain Lake_
_Stafford, TX 77477_
TREC #: _183859_

RECEIVED THIS ____ DAY OF _____ 200__    APR 0 9 2003
                                                RE/MAX of Tex[...]
                                                _____
                                                RE/MAX of Texas

## INDIVIDUAL GUARANTY

For value received, and for other good and valuable consideration the receipt of which is hereby acknowledged, the undersigned individually personally guarantees to Licensee, Regional, and the International, their respective heirs, legal representatives, successors and assigns, the full performance under this Agreement by the business entity identified as Contractor, including the full payment of any and all sums due under the terms, covenants and conditions this Agreement. The undersigned individual guaranty shall remain and continue in full force and effect as to any renewal, modification or extension of this RE/MAX Independent Contractor's Agreement.

X _Deborah N. Miller_
Individual Signature

## EXHIBIT A: THE TOP TEN MOST COMMONLY OVERLOOKED TRADEMARK STANDARDS

To protect the integrity of the trademarks, a RE/MAX® Sales Contractors must adhere to the fundamental trademark and graphic standards established in the RE/MAX of Texas Corporate Identity Manual for all promotional materials. The following are the "Top Ten" most often overlooked standards:

1.  RE/MAX® must always be in UPPERCASE with the ® registration symbol.

    CORRECT:        RE/MAX®
    INCORRECT:      Re/Max, RE/MAX, re/max

    EXCEPTION: do not use the registration symbol ® when the mark is used as part of the office d.b.a.:

    CORRECT:        RE/MAX (office assumed name)
    INCORRECT:      RE/MAX® (office assumed name)

2.  The complete RE/MAX® office name must appear prominently in each promotional piece.

3.  The primary office telephone number must appear in each promotional piece, except for the limited yard sign exception as summarized in item #4 below. A secondary telephone number may also be included in promotional materials so long as identified as a direct line, mobile, home or pager.

4.  The main office number or a direct-dial office owned and operated number, within the guidelines outlined in Policy Directive 01-01, must be the large number in the blue color bar on yard signs. Agents may utilize riders with additional numbers or place an extension number next to the primary office number.

5.  Only the main office address, not a home address, may appear in promotional pieces.

6.  The names of Personal Assistants in promotional pieces must be preceded by a term that identifies them as subordinate to the agent, i.e. Licensed Assistant to...

7.  You cannot mention any commission rates or rebates in any promotional pieces.

8.  Except for yard signs, each promotional piece must contain the phrase "Each Office Independently Owned and Operated" or "Independently Owned and Operated".

9.  The use of any other office or agent marks or personal logos in promotional pieces must be approved in writing by RE/MAX of Texas.

10. Refer to the Corporate Identity Manual and the RE/MAX of Texas Regional Office for the proper use, style and color of all RE/MAX® marks and logos.

Please refer to the Corporate Identity Manual for a more complete outline of trademark and graphic standards as well as to find marks to use in your promotional materials. Contact Nicole Fiori at the RE/MAX of Texas Regional Office if you have any compliance questions.

Acknowledged:

_Deborah N. Miller_
Contractor

Date: 2/15, 2003