**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

RE/MAX International, Inc.,

Plaintiff,

v.

TREND SETTER REALTY, LLC,
a Texas limited liability company;

PAVNOUTY ABRAHAM, an individual;

and

DEBORAH N. MILLER, an individual

Defendants.

**CIVIL ACTION NO. 4:07-CV-02426**

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# EXHIBIT J

					IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RE/MAX INTERNATIONAL, INC.<br><br>Plaintiff, | ) |
| VS. | ) CIVIL ACTION NO. 4:07-CV-02426 |
| TREND SETTER REALTY, LLC, A Texas Limited Liability Company;<br><br>PAVNOUTY ABRAHAM, an individual; and<br><br>DEBORAH N. MILLER, an individual,<br><br>Defendants. | ) |

*****************************************************

ORAL DEPOSITION OF PAVNOUTY ABRAHAM
MAY 28, 2008
Volume 1 of 2

*****************************************************

ORAL DEPOSITION OF PAVNOUTY ABRAHAM, produced as a witness at the instance of the PLAINTIFF AND COUNTERDEFENDANT, RE/MAX INTERNATIONAL, INC., and duly sworn, was taken in the above-styled and numbered cause on the 28th day of May, 2008, from 9:14 a.m. to 4:20 p.m., before Misty Fondren Clements, CSR in and for the State of Texas, reported by machine shorthand, at the Law Offices of Greenberg Traurig, L.L.P., 1000 Louisiana

Street, Suite 1800, Houston, Texas 77002, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

APPEARANCES

FOR THE PLAINTIFF and COUNTERDEFENDANT, RE/MAX INTERNATIONAL, INC.:

Mr. John R. Posthumus
GREENBERG TRAURIG, L.L.P.
The Tabor Center
1200 17th Street
Suite 2400
Denver, Colorado 80202
Ph: (303) 572-6500 Fax: (303) 572-6540
Email: posthumusj@gtlaw.com

FOR THE DEFENDANT and COUNTERPLAINTIFF, TREND SETTER REALTY, LLC, A TEXAS LIMITED LIABILITY COMPANY; PAVNOUTY ABRAHAM, AN INDIVIDUAL; AND DEBORAH N. MILLER, AN INDIVIDUAL:

Mr. Mayur Patel
HESTER & PATEL, P.C.
14511 Falling Creek Drive
Suite 403
Houston, Texas 77014
Ph: (281) 586-7999 Fax: (281) 586-7997
Email: mpatel@hesterpatel.com

ALSO PRESENT:
Mr. Adam Lindquist Scoville, Senior Counsel
RE/MAX International, Inc.

INDEX

| | PAGE |
|---|---|
| Appearances | 3 |
| Stipulations | 6 |
| PAVNOUTY ABRAHAM | |
| Examination By Mr. Posthumus | 7 |
| Signature and Changes | 230 |
| Reporter's Certificate | 232 |

EXHIBITS

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Amended Notice of Deposition of Trend Setter Realty, LLC | 11 |
| 2 | Notice of Deposition of Pavnouty Abraham | 11 |
| 3 | Ad-Mar Sign Company Correspondence | 58 |
| 4 | Color Copy of Trend Setter Realty Sign | 60 |
| 5 | Ad-Mar Signs Invoice # 4657 to Realty, Etc | 126 |
| 6 | Printouts from Internet Website Wayback Machine | 140 |
| 7 | Series of Documents Produced by Defendants to RE/MAX | 146 |
| 8 | Documents Produced by Defendants to RE/MAX, Defendant's 107 through Defendant's 179 | 147 |
| 9 | Color Copies of Trend Setter Realty Yard Signs | 175 |
| 10 | Trend Setter Realty, L.L.C. Independent Contractor Agreement | 182 |
| 11 | Various Documents from Production | 191 |
| 12 | Sequence of Documents - Defendants 000017 to 000051 | 192 |
| 13 | Trend Setter Realty Printouts of "Our Philosophy," "Commission Plan," "Agent Benefits" | 204 |
| 14 | Defendant's Production of Defendant's 000068 through Defendant's 000081 | 208 |
| 15 | United States Patent & Trademark Office, Service Mark Principal Register for Trend Setter Realty, LLC | 208 |
| 16 | Letter w/ Attachments to Deborah Miller from RE/MAX International Dated April 18, 2006 | 216 |
| 17 | Letter to Joe Weidmann from Erik M. Pelton Dated May 11, 2006 | 216 |

REQUESTED DOCUMENTS/INFORMATION

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Agreement Between Realty, Etc. and Trend Setter Realty to Assign Any Rights of Logo | 224 |

Page 10

Simply, you know, let him know that that's the case and we'll take a short break.
A. Sure.
Q. If there's any other reason you need to take a short break or whatever, please let me know and we'll go off the record and take a break. We'll probably try to take a break just so that people don't get too -- too tired; you know, once every hour, hour and a half, kind of a natural stopping point.
A. That's fine.
Q. Okay. Are you -- are you represented by counsel today?
A. Yes.
Q. And who are you represented by?
A. Mayur Patel.
Q. And that's the gentleman that's sitting to your left; correct?
A. Yes.
Q. Okay. And are you appearing on behalf of Trend Setter Realty, L.L.C. today?
A. Yes.
Q. And I believe you're also appearing on your own behalf, individually; correct?
A. Yes.
Q. Okay. We're combining the two depositions to

Page 11

have things proceed efficiently.
A. That's fine.
Q. Okay. I'm going to have the court reporter mark some exhibits here.
(Exhibit Nos. 1 and 2 marked.)
Q. (By Mr. Posthumus) Okay. I'm going to have you look at Exhibit 2 first.
A. Okay.
Q. And have you -- have you seen a copy of this before today?
A. Yes.
Q. Okay. And this is your notice of deposition of -- of -- of you, and because of scheduling issues, we've rescheduled you to 9:00 a.m. on May 28th.
A. Sure.
Q. Okay. And you're appearing in connection with the above referenced matter individually pursuant to this notice; correct?
A. Yes.
Q. Okay. And then have a look at Number -- Abraham Exhibit 1.
A. Okay.
Q. And have you seen this before today?
A. Yes.
Q. And this is the deposition notice of Trend

Page 12

Setter Realty, L.L.C. And so the record's clear, you're appearing on behalf of Trend Setter Realty, L.L.C. in connection with the categories of -- or deposition topics that are identified in Schedule A of this exhibit; correct?
A. Yes.
Q. Okay. And are you prepared today to discuss the 23 categories that are identified in Exhibit 1?
A. Yes.
Q. What is your relationship with Trend Setter Realty, L.L.C.?
A. I'm the general partner of the L.L.C.
Q. And are there members of the L.L.C.?
A. I'm the only member.
Q. And when you say you're "the only member," it would be you, individually, as the member; correct?
A. Yes.
Q. And throughout the history of Trend Setter Realty, L.L.C., have you been the only member?
A. Yes.
Q. When did you start -- if you're okay, I'll just refer to it as Trend Setter.
A. Yeah, that's fine.
Q. Okay. When did you start Trend Setter?
A. We got the L.L.C. on March of '05 and started

Page 13

doing business, I would say, around March or April, the end of March. I would say April 1st.
Q. And so since April 1st, 2005, Trend Setter has operated continuously?
A. Yes.
Q. Okay. And it's operated continuously as a real estate brokerage?
A. Yes.
Q. Has it had any other businesses besides real estate brokerage?
A. No.
Q. Okay. Now, you've identified yourself as the general partner. Is there -- is there an understanding that you have that -- as to what that means or what the responsibilities are as general partner?
A. I didn't understand the question.
Q. Okay. You said you're the only member of the L.L.C.; correct?
A. Yes.
Q. Okay. When you said you're a general partner, is that different in your mind from being a member of the L.L.C.?
A. I don't know the totality of your question. I'm -- I'm the sole owner of the company and the only member as you asked. You asked me if there was any

Page 106

Q. When you say, "the logo," you're referring to something similar to what the sign looks like?
A. Similar to Exhibit -- similar to Exhibit 4.
Q. Okay. So when you say, "Exhibit 4," when you say, "Similar," what -- what was -- what was not --
A. No, identical to it.
Q. Identical to Exhibit 4?
A. Yes.
Q. And that was on the door?
A. That was on the door and on the lobby of the office.
Q. The lobby, what do you mean by "the lobby"?
A. The lobby for Trend Setter.
Q. In the lobby inside the suite?
A. Inside the suite, yes.
Q. Was there any -- and so -- and you recently -- you just testified that Trend Setter moved to a building next door?
A. Yes.
Q. Okay. And so is that an interior entry location to a suite?
A. Yes.
Q. And then did you have similar signage on the front door there or has that changed?
A. No. It's -- will be placed sometime soon.

Page 107

We're negotiating the name to go on top of the building of where we're at.
Q. Okay. But I'm -- I'm only asking about --
A. What is it today?
Q. Yeah, today.
A. Just the print, just the print on --
Q. Okay. So it --
A. -- the glass door.
Q. -- says Trend Setter Realty in print on the front door?
A. Yes.
Q. The first business location for Trend Setter Realty, do you recall what the square footage of that location was?
A. Oh, it changed. We moved a few times.
Q. What about at the start?
A. At the start, it was about 1,200.
Q. 1,200 square foot?
A. Square feet, yes.
Q. Okay. And then right before you moved to the new business location, the adjoining building, what was the square footage at that point?
A. About 3,000 square feet.
Q. Okay. And then at the -- the new business location in the adjoining building, what's the square

Page 108

footage of that particular office?
A. About 3,500 square feet.
Q. 3,500?
A. (Witness nods head.)
Q. Is that your only office location in the Houston area?
A. Yes.
Q. Now, based on your website, you have an office location in the San Antonio area?
A. Yes.
Q. When did you start that location?
A. I would say a year ago.
Q. Okay.
A. About a year ago.
Q. Besides the San Antonio business location and the Houston location, which you just talked about, do you have any other business locations for Trend Setter Realty?
A. I don't, but some of the agents do. Some of the agents might have a Galveston office and they pay all the dues at Galveston; therefore, we give them the rights to use the signage and so on.
Q. Okay.
A. But that's not our overhead. That's not part of our operation.

Page 109

Q. Okay. And we'll get to that a little bit later --
A. Okay.
Q. -- all right?
But in terms of the business locations that Trend Setter Realty operates, besides the Houston business location and the San Antonio business location, there's no other business locations that Trend Setter Realty operates; correct?
A. Yes.
Q. Okay. So we're, I think, up to about April '05 now; right? You've opened your doors for Trend Setter Realty?
A. Yes.
Q. Okay. And so who's the broker owner at this point?
A. When we opened up, Debbie Miller was an agent and then she become a broker and joined the -- she was the only broker of record that we ever had.
Q. Okay. So Debbie Miller was an agent at the -- on April 1st, 2005?
A. No. She was an agent at wherever she was. And then when she joined us to become a broker, she got her broker license, and then she's the only broker of record we ever had.

Page 110

Q. Okay. But prior to -- okay, I understand. So Debbie Miller or Deborah Miller started with Realty -- I'm sorry -- Trend Setter at some point after it opened?
A. No. Debbie Miller -- yeah. I mean, I start up the whole -- the whole company and everything else, and then we acquired Debbie Miller to become -- to be the broker of record.
Q. Right. So that happened at some point after April 1st, 2005?
A. Some -- somewhere in that time, I don't have the exact dates.
Q. But prior to Deborah Miller joining as the broker of record, did you have a broker of record?
A. No. We were just getting things together. You can't have a broker without a broker of record.
Q. Okay. So you're getting things together. Do you remember when the -- so did you retain any real estate agents prior to Deborah Miller becoming broker of record?
A. You can't.
Q. Okay. So, no, you didn't -- Deborah Miller becomes broker of record?
A. You have to have a broker of record in order to retain agents.
Q. Okay. She becomes broker of record and then

Page 111

you start retaining agents --
A. Yes.
Q. -- correct?
Okay. And she joined sometime after April 1st, 2005, but you're not sure?
A. I don't know the exact date.
Q. But was it soon after that?
A. She starts with us when we first started it. I mean, that was it.
Q. So probably was in sometime in April or May of 2005. Would that be accurate?
A. I would say between March and May --
Q. Okay.
A. -- if you want a time, but I -- I'm not sure.
Q. Okay. So at this particular time, does -- this time frame, does Deborah Miller -- how is she compensated? What was the -- what was the arrangement?
A. She was on the payroll.
Q. So she was employed?
A. Yes.
Q. By Trend Setter?
A. Yes.
Q. Okay. And so she's a -- it's a salaried position?
A. Yes.

Page 112

Q. Does she have any ownership interest in Trend Setter?
A. No.
Q. Does she participate in any of the profits of Trend Setter?
A. No.
Q. Does she have -- or the ability to acquire any equity interest in Trend Setter?
A. I don't understand.
Q. Over time, let's say, for instance, she meets certain thresholds. Does she have the ability to acquire an interest in Trend Setter?
A. Does she have the ability if she produce more, you mean?
Q. Does she have an option?
A. No.
Q. No options to acquire any ownership interests in Trend Setter?
A. I got one partner; that's my wife. That's it.
Q. Okay.
A. Seriously.
Q. Okay. So you have -- right. Okay.
So you're the only member, as you've testified a little bit earlier, and --
A. Yes.

Page 113

Q. All right. And your wife doesn't participate in any of the operation of the --
A. Sometime whenever they call sick or somebody gets drunk or something, but sometime.
Q. Okay. Just she helps out.
A. Yeah, secretary work, nothing else.
Q. Right. Okay. So let's -- what I'd like to do is -- well, let's -- I want to try to, as best as I can, sketch out the history of Trend Setter from April 1st, 2005, if I can.
A. Go ahead.
Q. We'll try this and see if it works.
On the website -- I went to the website last night and I was looking at the roster and it has a star that says, "Designated member." And the only person that has a star by their name is Deborah Miller. Is that --
A. The broker.
Q. That's the designation for broker of record?
A. Yeah, every office, if it has -- I think if it has a star by it, that means that's -- they are -- they are the broker of record.
Q. Okay.
A. Not the broker because we have other brokers, but Debbie would be the broker of record.

Page 126

(Discussion off the record.)
(Recess from 12:00 to 1:17.)
(Exhibit No. 5 marked.)
MR. POSTHUMUS: Let's go back on the record.
Q. (By Mr. Posthumus) Abraham, you've been handed what's been marked as Abraham Exhibit 5.
A. Yes.
Q. And I'll represent to you that this is a -- I'll call it a darkened version of what has been produced as Defendant's 16. You'll see the Defendant's 16 designation at the bottom of the screen and --
A. (Witness reviews document.) Okay.
Q. Okay. And I think you've opened up the previous version that we've talked to, which was part of, let's see, Abraham Exhibit 4.
A. Okay.
Q. Is that correct?
A. Yes.
Q. Okay. So --
A. No, this --
Q. No, this is Exhibit 4. No. I'm sorry. You're right. It's Exhibit 3, Abraham Exhibit 3. Thank you.
All right. So I want to go through this just

Page 127

in a little bit more detail because some of the print that was not legible because of photocopying is now legible. And by the way, do you have the original of this document? Is it in your attorney's possession or in your possession still?
A. I have what you have, copies of these.
Q. Right. But the original, the -- I guess, the version from which the copy was made that was produced to us?
A. It's also a copy. Yeah, it -- we can call that an original. That's fine.
Q. Okay. And do you have the original or does --
A. Either me or Erik has it.
Q. Okay. Erik may have it. Okay. All right. And we may -- I think we're going to request the original to make sure that we have the best copy available, but I want to -- I want to go back and look at the description here for the 10 -- quantity 10 signs that was -- that was acquired. And, again, this is back in, I believe, the 1998 time frame.
It says here, it looks like, "P-113, 18 by 24 Steel Sign Panels." Do you see that?
A. Yes.
Q. Okay. It says, "White background," and then I believe it says, "w/," which I would -- would you agree

Page 128

with me that that stands for "with" or is it a shortened designation for "with"?
A. I wouldn't know.
Q. Okay. And then it's followed by what appears to be "R/M red and blue" or -- and an "e," little "e" with a line through it, "blue." Do you see that?
A. Yeah. I see what you read, yes.
Q. Okay. Does this refresh your recollection as to any discussion that may have occurred between Realty, Etc. and Ad-Mar regarding the RE/MAX red and blue colors?
A. I don't recall, no.
Q. What does the -- what does the R/M stand for in your mind?
A. I don't know. Ask Ad-Mar. I have no idea. They put it in there, not me.
Q. Okay. But when you received this document, what did you understand it to mean?
A. I don't recall.
Q. You don't recall?
A. No.
Q. Is there any explanation as to what the R/M means in this context?
A. Honestly, the first time I -- you brought it to my attention here was earlier today.

Page 129

Q. Okay.
A. I didn't recall seeing this ever before.
Q. All right. Abraham, what I think this means is, is that it says, "White background" -- and this is what I believe it says -- "with RE/MAX red and blue." Do you have any reason to disagree with me that that's what it -- that's what it says?
A. If I have to guess, I -- I'd say no.
Q. You don't think it says that?
A. I don't know. Why would it say RE/MAX?
Q. Well, the reason it would say RE/MAX is because it has the RE/MAX red and blue colors on the proposed sign.
A. If I have to guess, I'd say no. It's not the same colors.
Q. Okay.
A. Are they the same colors?
Q. What does the R/M stand for in this context?
A. I don't know. Like I said, I just noticed that when you brought it to my attention earlier before lunch.
Q. Right.
A. I've never noticed that before.
Q. It says underneath that -- I mean, it says underneath that, "Imprint: Per Customer

Page 214

there, where you used the RE/MAX agents. Were you using a logo or a particular name to sell your properties?
A. I might. I can't remember.
Q. Okay. So -- but do you remember using a name? I mean, it doesn't appear that you used Realty, Etc. until 1998; right?
A. Yeah. I don't remember. I don't recall that far back.
Q. Would you have used the logo with a different name before Realty, Etc.?
A. I don't know.
Q. So is there anything you can review to refresh your recollection?
A. No.
Q. So you don't know if you used the logo prior to using it as part of Realty, Etc.; correct?
A. I can't remember. I don't recall.
Q. You just -- you don't know if you used it prior to that date or not?
A. I don't know.
Q. Do you have an understanding of why this date of first use is December 1996?
A. I don't know.
Q. Do you recall reviewing your records to confirm that as the first use date?

Page 215

A. No, I don't recall.
Q. Is there anything particular about December 1996 that -- that rings a bell with you about December of 1996? Were you in the Houston area?
A. Yes. I -- I was selling Christmas trees, seriously, in the tents. I did like 10 different spots of them. It was a great season. We had some money, we bought a bunch of trees and that's what we did for the season. It was great.
Q. I mean, you -- I don't remember what date you said that you started Pavnouty Enterprises.
A. Oh, this was -- I was selling it for somebody. It was a friend of mine.
Q. Okay.
A. I was just helping him financially on the background, backing him up a little bit.
Q. Right.
A. It was -- never do it again, but it was fun.
Q. I mean, would this -- would this usage have been associated with the enterprises company?
A. No, not at all.
Q. No?
A. You just asked me about December of '96 --
Q. Right.
A. -- and that's what I was -- just remember

Page 216

that.
Q. Okay.
A. Otherwise, no.
Q. So you don't have any explanation for --
A. I don't recall.
Q. -- that particular date?
A. No. I don't recall why this day is there.
Q. Okay. All right. So the -- there's a description of the trademark here. It says, "The color red appears in the top portion of the rectangle. The color white appears in the stylized representation of a house and the color blue appears in the blue in the bottom rectangle." Do you see that?
A. Yes.
Q. Do you agree with that representation of the mark?
A. Yes.
Q. Have you ever attempted to register the logo with the State of Texas?
A. No.
(Exhibit Nos. 16 and 17 marked.)
Q. (By Mr. Posthumus) All right. You've been handed what's been marked as Abraham Exhibits 16 and 17. I'm going to ask you if you can identify these documents.

Page 217

A. It's a lot -- a lot of writing. Let's see. "Your use of design similar to RE/MAX marks." A letter to Ms. Miller from RE/MAX International, April 18, '06.
Q. Do you recall seeing this letter dated April 18, 2006, sometime after -- soon after the -- the -- that date, that particular date?
A. Yes.
Q. How did -- how did -- describe, if you recall, the circumstances of having learned about this particular letter.
A. We got -- Debbie got this letter. She showed it to me and we know that we are far off of similarity and we left it alone.
Q. Okay. So it appears, reviewing Exhibit 17, that at some point you retained Erik Pelton after receiving the April 18, 2006 letter?
A. Yes.
Q. Okay. So -- but this particular letter to Deborah Miller, you retained Mr. Pelton and Mr. Pelton responded to the letter. Would that be accurate?
A. I'm sure.
Q. No, is that --
A. Yes.
Q. Is that your recollection?
A. Yes.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RE/MAX INTERNATIONAL, INC. )
Plaintiff, )

VS. ) CIVIL ACTION NO. 4:07-CV-02426

TREND SETTER REALTY, LLC, A Texas Limited Liability Company; )

PAVNOUTY ABRAHAM, an individual; and )

DEBORAH N. MILLER, an individual, )

Defendants. )

*******************************************************

ORAL DEPOSITION OF PAVNOUTY ABRAHAM
MAY 29, 2008
VOLUME 2 of 2: PGS. 235-345

*******************************************************

ORAL DEPOSITION OF PAVNOUTY ABRAHAM, produced as a witness at the instance of the PLAINTIFF AND COUNTERDEFENDANT, RE/MAX INTERNATIONAL, INC., and duly sworn, was taken in the above-styled and numbered cause on the 29th day of May, 2008, from 9:23 a.m. to 11:52 a.m., before Misty Fondren Clements, CSR in and for the State of Texas, reported by machine shorthand, at the Law Offices of Greenberg Traurig, L.L.P., 1000 Louisiana

Page 240

PAVNOUTY ABRAHAM,
having been first duly sworn, testified as follows:
EXAMINATION
(Continued)
BY MR. POSTHUMUS:
Q. I will remind you that you are still under oath.
A. Right.
Q. Okay. Let's -- I'd like to pick up with the -- when you started Trend Setter and go through a little bit of the history of Trend Setter.
A. Okay.
Q. And I believe you -- just to -- just so the record's clear and to kind of remind ourselves, you opened the doors of Trend Setter on April 1st, 2005; correct?
A. Well, yes.
Q. Or -- or about that time?
A. About that time, yes.
Q. Yes. And so do you have -- in terms of -- of a general history of Trend Setter, do you have an understanding of the number of agents, just generally, and I'm not talking about an exact number, but the growth of the number of agents that Trend Setter has had over -- let's say, on a yearly basis or on some type of

Page 241

periodic basis?
A. Well, I would say three years, we have 700, divided by 3, it's about a couple of hundred agents a year --
Q. So you've --
A. -- or so.
Q. So would it be accurate then, just generally speaking, to say that at the end of '06 you had approximately 200 agents?
A. End of?
Q. End of '07 you had about 400 agents -- I'm sorry. The end of '05 you had about 200 agents?
A. End of '05 we had about, yeah, 150 to 200.
Q. And then at the end of '06 you had?
A. If I have to guess, 200 to 400.
Q. And then the end of '07?
A. 400, 600.
Q. Okay. Now, the does the company Trend Setter, the L.L.C. Trend Setter, does that entity file tax returns?
A. Yes.
Q. And does -- and then you file tax returns as the -- the member of that L.L.C. or the only member of that L.L.C.?
A. Yes.

Page 242

Q. Okay. And so in terms of -- of -- the first tax return would have been for the year '05; would that -- is that accurate?
A. Yes.
Q. Okay. Do you recall what the -- the net income of Trend Setter was at the end of '05?
A. No.
Q. Do you recall what the net income of Trend Setter was at the end of '06?
A. No.
Q. What about at the end of '07?
A. No. I haven't done '07 yet.
Q. Okay. Haven't finished '07?
A. I haven't finished it, no.
Q. Okay. Do you have an accounting firm that does your tax returns?
A. I gather everything together and I take them to an accounting firm at the end of the year, but I file my own extensions and so on.
Q. Okay. So who prepared your tax return or Trend Setter's tax return for the end of '05 or for year '05?
A. I don't remember. I used several different accounting firms. I don't remember exactly who did '05 or '06. I used several different companies. I don't

Page 243

know who did it.
Q. Do you recall if the -- if the Trend Setter posted any type of profit for '05?
A. I can't answer that.
Q. You don't know?
A. No, I don't know.
Q. Who would know that?
A. I would know that once I look at my financials. I don't have them with me and I can't remember.
Q. Okay. So you didn't review the financial documents prior to coming to the deposition today?
A. I did. There's so much of it. I know profit wise, we didn't -- the first couple of years we didn't have a lot of profit, but then '07, I haven't really got it all together yet.
Q. Okay. But what about -- I'm trying to get a general number for '05 and '06. I mean, do you know -- do you have a sense of it? Is it -- was it -- you didn't report a loss. Let's talk about it this way. In '05 Trend Setter did not report a loss; is that correct, or did they?
A. I didn't say that.
Q. Okay.
A. No, I don't know.

24"

18"

For Sale

REALTOR MLS

REALTY ETC...

713-592-6666

11/30/98
INVOICE# 4657
18" X 24" SIGN
White Background with
Red & Blue Imprint

AD-MAR SIGNS
9310 Ronda Lane
Houston, Texas 77074
Local: (713) 271-1444
Toll Free: 1-(800) 231-5790
FAX: (713) 271-9243

EXHIBIT
Abraham 3
5-28-08

Agents Needed Pre-approved leads provided. Great commision split, free copies, fax, mls, advertising, and internet. Call David 713-592-6666

Chronicle

Visit us on the Web at:
http://www.admarsigns.com

# Real Estate Signs

May 1998

# Affordable Real Estate Signs

AD-MAR's customers are always assured of the finest quality workmanship and materials for each invested dollar.

- SIGN PANELS
- PANEL/FRAME ASSEMBLY
- DOUBLE CORRUGATED PLASTIC PANELS
- SMALLER YARD SIGNS
- PORT-A-POST
- MAGNETIC CAR SIGNS
- POSTERBOARD SIGNS
- OPEN HOUSE/HOME FOR SALE
- TENT FRAMES
- ASK FOR/NAME RIDERS
- PHOTO RIDERS
- STAKES & FRAMES

Upon receipt of your order, please be assured of our prompt and careful attention.

"Since 1977"

AD-MAR Industries, Inc.
9310 Ronda Lane
Houston,Texas 77074-1329
Toll Free 1-800-231-5790
24 Hour Fax 1-800-232-0079
E-Mail: admarsigns@aol.com

# STAKES & SLIP ANGLE FRAMES

| | | QUANTITY | 1-10 | 11-25 | 26 & up |
|---|---|---|---|---|---|
| SAF-1 | 16, 18, 24 x 24 | - 42" tall | $10.00 ea. | $9.00 ea. | $8.50 ea. |
| SAF-2 | 24 x 32 | - 48" tall | $13.00 ea. | $12.00 ea. | $11.50 ea. |
| SAF-3 | 18 x 24 | - 48" tall | $11.00 ea. | $10.00 ea. | $9.50 ea. |
| SAF-4 | 24 x 24 | - 48" tall | $12.00 ea. | $11.00 ea. | $10.50 ea. |
| | Bolt-In | | | | |
| BAF-1 | 18 x 30 | - 42" tall | $13.00 ea. | $12.00 ea. | $11.50 ea. |
| BAF-2 | 24 x 36 | - 48" tall | $14.00 ea. | $13.00 ea. | $12.50 ea. |

STRAIGHT ANGLE

SAF-1
SAF-2
SAF-4

CURVED ANGLE

SAF-3

BAF-1
BAF-2

METAL STAKE A-107 ¾" x ¾" x 48" - W/Foot Tee
METAL STAKE A-108 ¾" x ¾" x 42" - W/Foot Tee
WOOD STAKE A-111 ¾" x 1½" x 48"

| Cat No. | Quantity | 10 | 25 | 50 |
|---|---|---|---|---|
| A-107 | 48" Steel Stake | $4.50 ea. | $4.00 ea. | $3.50 ea. |
| A-108 | 42" Steel Stake | $4.25 ea. | $3.75 ea. | $3.40 ea. |
| A-111 | 48" Wooden Stake | $1.00 ea. | $0.90 ea. | $0.80 ea. |

A-107
A-108
A-111

EXTRA HARDWARE
¾" Set with Washer & Wing Nut ................................$0.16 ea.
1½" Set with Large Washer & Wing Nut ..................$0.18 ea.

---

**AD-MAR SIGNS**
INDUSTRIES, INC.

AD-MAR Industries, Inc.
9310 Ronda Lane
Houston, Texas 77074-1329
Local 713-271-1444
Toll Free 1-800-231-5790
24 Hour Fax 1-800-232-0079
E-Mail: admarsigns@aol.com

## ORDER FORM

DATE: ____________

AGENT NAME ____________

Firm Name ____________

Address ____________

City ____________ State ________ Zip ________

Phone No.: (____) ____________

CARD NUMBER ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

MONTH YEAR ☐☐☐☐ Expiration Date

PLEASE PRINT NAME (As it appears on your card)

METHOD OF PAYMENT:
- ☐ Check Enclosed
- ☐ Mastercard
- ☐ Discover
- ☐ VISA
- ☐ American Express

## IMPRINT:

PLEASE INDICATE IMPRINT OF NAME AND NUMBER *AS THEY ARE TO APPEAR ON ALL PRINTED ITEMS.*

________________

________________

________________

| CAT. NO. | DESCRIPTION (Indicate Size and Material) | QUANTITY | PRICE EA. | TOTAL |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*FAX PROOF FOR STANDARD SIGNS - ADD $9.00*

TOTAL ON ITEMS ABOVE ______

PLEASE CALL OUR SALES OFFICE: 1-800-231-5790 for Pre-Paid Delivery Costs

Prepaid Shipping Charge ______

SUBTOTAL ______

Texas Orders Add 8¼% Sales Tax (Tax on Total With Shipping) ______

TOTAL ______

OFFICE USE

*(Please Enclose Business Card Showing Name With Order)* and/or Furnish Sketch

"Thank you for your order"

TERMS: Payment with order CHECK, MASTERCARD, VISA, AMERICAN EXPRESS or DISCOVER.

CUSTOMER SERVICE: Custom imprinted merchandise cannot be returned. 10 percent (10%) restocking charge for stock items. Please call before returning merchandise.

Prices subject to change without notice. Printed in U.S.A. 1998

©1998 AD-MAR INDUSTRIES, INC.


9310 Ronda Lane ∘ Houston, Texas 77074 ∘ (713) 271-1444 ∘ 1-(800) 231-5790 ∘ FAX: (713) 271-9243

# FAX COVER LETTER

Date: 11/30/98

Contact Person: ~~Joanne~~

Contact's Company: Realty Etc...

Fax Sent From: ~~Wayne Rogers~~

Total Number of Pages Sent (Including This Cover Letter) 2

Message:

Please note the suggested layout for your signs. Upon approval please sign copy and fax it back to us. Thank you for choosing Ad-Mar Signs.

Send This To Fax Number: 713-661-6650

REAL ESTATE SIGNS - MAGNETIC SIGNS - SILK SCREEN PROCESS - CORRUGATED PLASTIC - METAL - MASONITE - FIBERGLASS COMPUTER CUT VINYL LETTERS - CUSTOM BANNERS - STOCK BANNERS & PENNANTS - LARGE STOCK RIDERS, OPEN HOUSE, STAKES & FRAMES

AD-MAR SIGNS

9310 RONDA LANE
HOUSTON, TEXAS 77074-1329

(713) 271-1444
(TOLL FREE) 1-800-231-5790

# INVOICE

PLEASE REFER TO INVOICE NO. WHEN CALLING ABOUT ORDER. [illegible]

DATE: [illegible] 03

CUSTOMER ORDER NO: Joanne

SHIP VIA: Call When Ready

APPROX. SHIPPING DATE: Approx 3-2-03

713-661-6566

TO: Realty Ex...
Joanne Meglie
5851 [illegible] Fwy #211
Houston, Tx 77057

TERMS: Customer Will Mail Check. Fax 713 661-6650

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
| --- | --- | --- | --- |
| 10 | P113 18X24 Steel Sign Panels White background w/Red and Blue | $ ~~21.30~~ 28.10 ea | $ ~~213.00~~ 281.00 |
| | | Sales tax | ~~17.57~~ 23.18 |
| | Imprint: Per Customer Specification | Total | $ ~~230.57~~ $304.18 |
| | — no Holes — | | |

Pd 152.09
Ck# 12251
(347)

Joanne Meglie

*Thank You!*