IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RE/MAX INTERNATIONAL, INC., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. |
|  | ) 4:07-CV-02426 |
| TREND SETTER REALTY, LLC, a Texas limited liability company; | ) |
| PAVNOUTY ABRAHAM, an individual; and | ) |
| DEBORAH N. MILLER, an individual | ) |
| Defendants. | ) |

**FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS**

This action was commenced by Plaintiff RE/MAX International, Inc. ("RE/MAX" or "Plaintiff") against Defendants Trend Setter Realty, LLC ("Trend Setter"); Pavnouty Abraham ("Abraham"), and Deborah N. Miller ("Miller") (collectively "Defendants") on July 25, 2007.

In its complaint, RE/MAX asserted claims for trademark infringement, trademark dilution, and unfair competition under federal law (Counts I, II and III); trademark infringement and dilution under the Texas Business and Commerce Code § 16.26 and § 16.29 (Counts IV and V); and trademark infringement and unfair competition under Texas common law (Counts VI and VII). RE/MAX also asserted a Texas common-law breach of contract claim (Count VIII) against Miller for violating her Independent Contractor Agreement ("ICA") with a RE/MAX franchisee that contractually obligated her to cease using the RE/MAX marks and prohibited infringement, use or imitation of the RE/MAX service marks.

The Defendants answered and counterclaimed seeking a declaratory judgment of non-infringement and non-dilution, and requesting cancellation of RE/MAX's Federal Trademark Registration No. 1,702,048 ("the '048 Registration"). RE/MAX amended its complaint on September 24, 2008 to add a claim for cancellation of Trend Setter's design service mark Reg. No. 3,222,708 on the ground that it causes confusion with RE/MAX's registered marks. (Count IX). At the conclusion of discovery, RE/MAX moved for partial summary judgment on liability for its Counts I, III, IV, VI, VII, VIII, and IX.

In the Court's Order of September 3, 2009 ("Order"), the Court, *inter alia*, granted RE/MAX's motion for partial summary judgment, and denied Defendants' counterclaim seeking cancellation of the RE/MAX '048 Registration, thereby resolving liability on RE/MAX's Counts I, III, IV, VI, VII, VIII, and IX. Subsequently, RE/MAX dismissed its remaining federal and state claims (Counts II and V) without prejudice.

## *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

### *FINDINGS OF FACT*

The Court has jurisdiction has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338 and 1367. The Court adopts and incorporates herein the findings of fact, analysis and conclusions of law set forth in the Order. Any findings of fact that are more properly conclusions of law are so deemed. Any conclusions of law that are more properly findings of fact are so deemed. The Court makes the following findings of fact herein.

RE/MAX is a corporation that has provided real estate brokerage services through a network of franchisees and affiliated independent contractors and sales associates since the early 1970s. Trend Setter is a limited liability company with offices in Houston and San Antonio. It has provided real estate brokerage services in the Houston area since around April 1, 2005.

Defendant Pavnouty Abraham founded Trend Setter in early 2005 and remains its sole owner. Abraham is responsible for marketing and promoting Trend Setter's services to those interested in buying or selling real estate. Defendant Deborah Miller is currently the broker of record, or sponsoring broker, for Trend Setter. Miller joined Trend Setter after working as a real estate agent with several firms, including two separate RE/MAX franchises.

RE/MAX owns several federal service mark registrations that feature a rectangular design consisting of three equally spaced horizontal bars. The top bar is red, the middle bar is white, and the bottom bar is blue. Some of RE/MAX's marks also contain other words and/or design elements, the most well known of which is the red, white, and blue RE/MAX hot-air balloon. This suit involves three federal marks, U.S. Trademark Registration No. 1,691,854 (registered on June 9, 1992), No. 1,702,048 (registered on July 21, 1992), and No. 1,720,592 (registered on Sep. 29, 1992), and one state mark, Texas State Trademark Registration No. 55729 (registered on June 5, 1996). RE/MAX's Registration No. 1,691,854 and No. 1,720,592 have the three horizontal red, white, and blue bars in the rectangular design and a red, white, and blue hot-air balloon in the top left corner.

The trademark applications show that these marks were first used in commerce in October 1979. RE/MAX's federal Trademark Registration No. 1,702,048 has the three red-over-white-over-blue horizontal bars without a balloon. This mark was first used in commerce at least as early as January 1, 1974. RE/MAX's Texas Registration No. 55729 also has the red-over-white-over-blue horizontal bars without a balloon. RE/MAX's service marks are registered for use in conjunction with providing real estate brokerage and insurance brokerage services.

Since at least as early as 1974, RE/MAX and its affiliates have provided real estate brokerage services in the United States using the RE/MAX service marks. RE/MAX brokers and

associates use these marks on a variety of advertising media-including yard signs, business cards, newspapers and other print media, Internet web sites, hot-air balloons, brochures, banners, and other advertising items-to identify themselves as associated with the RE/MAX franchise. RE/MAX and its licensees have invested billions of dollars developing and maintaining its marks in the United States and worldwide. RE/MAX affiliates have used "the RE/MAX Trademark" in connection with over 20 million real estates transactions around the world. RE/MAX has continuously operated using its trademark in the Houston area since 1979 and in the San Antonio area since 1984.

Trend Setter owns U.S. Trademark Registration No. 3,222,708, filed May 30, 2006 and issued on March 27, 2007 consisting of a rectangular design with three parts. The top is red, the middle is white, and the bottom is blue. The middle white portion is in the shape of a stylized representation of a house. The top red portion would be a horizontal bar but for the protrusion of the white roof. The bottom blue portion is a straight horizontal bar. The Trend Setter mark is registered for use in conjunction with real estate brokerage services. Trend Setter's registration states that the first use was in December 1996 and the first use in commerce was in October 19, 1998.

In March 2005, Abraham started a new real estate brokerage service, Trend Setter Realty, which opened its Houston location on April 1, 2005. Abraham hired Miller as Trend Setter's broker of record. By the end of 2005, Trend Setter had between 150 and 200 agents. By mid-2008, Trend Setter had approximately 700 agents.

Since it opened in April 2005, Trend Setter agents have used the red, white, and blue mark with the stylized house shape in the center to identify the real estate agency to current and potential clients. Trend Setter has used the mark in various advertising media, including real

estate yard signs, brochures, fliers, home listings, and newspaper advertisements, as well as on its website, http://www.trendsetterrealty.com. The Trend Setter yard signs contain the red, white, and blue Trend Setter design with the words "For Sale" on the red top portion, the listing agent's name and phone number on the bottom blue bar, and the name "Trend Setter" in bold across the white portion. A side-by-side comparison of the two signs is shown below:

 

Abraham met Miller in the mid-1990s. During the 1990s, Miller worked as a sales associate at various real estate firms, including two RE/MAX franchises in the Houston area. As a RE/MAX sales affiliate, Miller used RE/MAX service marks on RE/MAX yard signs with her name on them when she listed homes for sale. Around 2000, while Miller was still a RE/MAX agent, she listed four or five houses on Abraham's behalf using her RE/MAX yard sign. When Abraham began Trend Setter, he employed Miller as his broker of record. Miller left RE/MAX on about February 28, 2005 to join Trend Setter.

When she had worked at RE/MAX Elite, a RE/MAX franchise, Miller entered into an Independent Contractor Agreement ("ICA") that allowed her to use RE/MAX's service marks during her employment but stipulated that after her employment ended, she would stop using any of RE/MAX's "distinguishing characteristics," including RE/MAX's service marks, trademarks, designs, slogans, logos, lawn signs, "color combinations and style," and "other advertising copy

5

now or hereafter displayed, used or becoming a part of the RE/MAX business." When Miller left RE/MAX in February 2005, her contractual obligations to cease using the RE/MAX marks began. RE/MAX Elite has assigned its rights in the ICA to RE/MAX, including the right to bring suit to enforce the ICA.

After Miller's departure from RE/MAX Elite, RE/MAX became aware that Miller was offering competing real estate brokerage services in the Houston area on Trend Setter's behalf, using a red-over-white-over-blue yard sign. RE/MAX wrote several letters in early 2006 to Trend Setter, Miller and Abraham informing them that their use of the Trend Setter yard sign in conjunction with offering real estate services was likely to cause consumer confusion with RE/MAX's trademarks. After receiving those letters from RE/MAX alleging infringing activity by use of the Trend Setter signs, Trend Setter on May 30, 2006 filed its application for registration of its sign design that later issued as Registration No. 3,222,708.

## *CONCLUSIONS OF LAW*

### Plaintiff's Trademark Infringement and Unfair Competition Claims

To prove infringement, a plaintiff must show ownership of a legally protectable mark and that there is a likelihood of confusion between that mark and the defendants' allegedly infringing material. *American Rice Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir.2008). The likelihood-of-confusion standard used in Lanham Act infringement analysis also applies to RE/MAX's federal and state unfair competition claims, its Texas statutory trademark infringement claim, and its common law trademark infringement claim. *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir.1993); *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483-84 (5th Cir.2004).

RE/MAX's certificate of registration for each of its federal trademarks is *prima facie* evidence of the validity of the mark and of RE/MAX's exclusive right to use it in connection with real estate brokerage and insurance brokerage services. 15 U.S.C. § 1057(b), § 1115(a). RE/MAX's three federal trademarks have been registered and used in commerce for over five years, achieving incontestable status. 15 U.S.C. § 1065; *see also American Rice,* 518 F.3d at 330. The RE/MAX trademark is an arbitrary mark, and it not generic because the public identifies it with a particular source, not as identifying real estate services in general. There is no descriptive or suggestive connection between real estate services and three horizontal bars or a red, white, and blue color scheme.

The RE/MAX mark is a strong mark, as RE/MAX's tri-color designs, including those lacking balloons, have come to develop marketplace significance and serve as source identifiers. RE/MAX has used its tri-color mark continuously for over thirty years, devoting substantial time and resources to developing and maintaining the potency of its marks as source identifiers. Consumers associate RE/MAX's tri-bar marks with RE/MAX real estate brokerage services.

Considering the *American Rice* factors involved in assessing likelihood of confusion, the Court has determined that the overall impression conveyed to consumers by the Trend Setter sign design creates a likelihood of confusion. The Trend Setter marks and advertisements all use the same red, white, and blue color scheme and similar horizontal bar arrangement as the RE/MAX marks and advertisements. Despite some differences—including that the RE/MAX sign contains the RE/MAX hot-air balloon in the left corner, while the Trend Setter sign does not, and the Trend Setter sign includes a stylized representation of a house in the middle white portion—the signs are similar enough in their most significant features to cause confusion in the market for

real estate brokerage services. The Defendants' use of their red, white, and blue signs in advertising is likely to confuse ordinary consumers.

RE/MAX's red, white, and blue tri-bar marks have become strong source identifiers within the market for real estate brokerage services and have wide consumer recognition. Trend Setter's mark is similar in color scheme and design, both in the parties' federal Trademark Registrations and as presented to consumers in the marketplace in real estate yard signs. Both companies advertise similar services using similar advertising means, operate through similar advertising channels, and attract the same class of consumers. Although the record does not permit the conclusion, as a matter of law, that the defendants acted with the intent to deceive, an intent to mislead is not required for a finding of infringement. Although RE/MAX did not introduce evidence of actual incidents of confusion, such evidence can be difficult to establish because many instances are unreported. On the other hand, the significant confusion rate in the survey offered by RE/MAX supports the conclusion that there is actual confusion among real consumers, weighing strongly in favor of a likelihood of confusion.

Therefore, Defendants' use of their red, white, and blue signs in advertising their real estate services is likely to confuse ordinary consumers. Because there is a likelihood of confusion and no applicable affirmative defense, judgment is entered against Defendants for their trademark infringement and unfair competition under federal law (Counts I and III); trademark infringement under the Texas Business and Commerce Code § 16.26 (Counts IV); and trademark infringement and unfair competition under Texas common law (Counts VII and VIII).

**RE/MAX's Claim for Cancellation**

RE/MAX established a likelihood of confusion under § 32(1)(A) of the Lanham Act, 15 U.S.C. § 1114(1)(A) with respect to the Trend Setter registered mark. The Trend Setter

registration is less than five years old, and may be cancelled on the ground that it would have been barred from registration in the first instance under § 2(d). 15 U.S.C. § 1052(d). RE/MAX's claim for cancellation of Trend Setter's Reg. No. 3,222708 in Count IX was granted in the Order. Therefore, judgment is entered on Count IX cancelling Trend Setter's U.S. Reg. No. 3,222,708. Pursuant to 15 U.S.C § 1119, cancellation of this Registration shall be certified to the Director of the U.S. Trademark Office.

**Defendants' Counterclaim for Cancellation of RE/MAX Reg. No. 1,702,048**

Defendants sought cancellation of RE/MAX's federal Reg. No. 1,702,048, the tri-bar mark comprising three red-over-white-over-blue horizontal bars without a hot-air balloon. The three grounds on which they challenged the validity of RE/MAX's Registration fail to support cancellation. First, the RE/MAX trademark is not a prohibited simulation of the flag or other insignia of the United States or any foreign nation because ordinary viewers would not perceive the mark as representing any such flag. Therefore, Defendants cannot sustain a claim for cancellation on the basis of a violation of Section 2(b) of the Trademark Act, 15 U.S.C. § 1052(b).

Second, Defendants' claim that the RE/MAX Registration is subject to cancellation for alleged mutilation or abandonment is without merit. Lastly, Defendants' claim that the public perceives the red, white, and blue RE/MAX mark as a generic mark also is without merit, as a significant number of consumers associate the red, white, and blue yard RE/MAX marks as designating real estate brokerage services from real estate agents affiliated with RE/MAX. RE/MAX's tri-bar marks mark are strong, arbitrary marks that consumers associate with real estate brokerage services provided by the RE/MAX network of affiliates.

For these reasons, judgment is entered in favor of RE/MAX on Defendants' counterclaim.

**RE/MAX's Breach of Contract Claim Against Miller**

On February 15, 2003, Miller entered into an ICA with a RE/MAX franchisee. In Paragraph 12 of the ICA, Miller promised that after her relationship with RE/MAX Elite terminated, she would "not infringe upon, use or imitate" RE/MAX's method of operation or its distinguishing characteristics, including its trademarks, service marks, "lawn signs, color combinations and style." The purpose of paragraph 12 of the ICA is to prevent former agents from disclosing or using RE/MAX trademarks, confidential information, or trade secrets, which RE/MAX is entitled to protect. The language of Paragraph 12 does not constitute a noncompete covenant subject to § 15.50(a) of the Texas Business & Commerce Code. Rather, this language seeks to protect RE/MAX's business goodwill from diminution by former agents who might mislead consumers into thinking the agent is still affiliated with RE/MAX.

Because Paragraph 12 is not a covenant not to compete under Texas law, it is not subject to the limitations of § 15.50(a). The ICA does not prevent Miller from competing with RE/MAX for listings or clients, which she may do without any restrictions as to time or place, without using a red, white, and blue sign that could be confusingly similar to the RE/MAX marks. Use of a confusingly similar sign is not essential to succeeding in the real estate business, such that "it inhibits competition virtually the same as a covenant not to compete." *Peat Marwick Main & Co. v. Haass,* 818 S.W.2d 381, 385-386 (Tex.1991). Miller breached the ICA by using Trend Setter yard signs imitating RE/MAX's in their color combination and style after the ICA terminated. Therefore, judgment is entered against Miller for breach of the ICA.

**The entry of Final Judgment and Order for Permanent Injunction Against Defendants and damages, and the Court being otherwise fully advised in the premises, it is**
**ORDERED AND ADJUDGED:**

1. This Court has jurisdiction over all the parties and all of the claims set forth in RE/MAX's Complaint and Defendants' Counterclaims.

2. Judgment is entered against Defendants for trademark infringement and unfair competition under federal law (Counts I and III); trademark infringement under the Texas Business and Commerce Code § 16.26 (Counts IV); and trademark infringement and unfair competition under Texas common law (Counts VI and VII).

3. Judgment is entered on Count XI cancelling Trend Setter's U.S. Reg. No. 3,222,708. Pursuant to 15 U.S.C § 1119, cancellation of this Registration shall be certified to the Director of the U.S. Trademark Office.

4. Judgment is entered against Miller for breach of the ICA (Count VIII).

5. Making permanent the Order for Injunctive Relief entered October 6, 2009, effective November 5, 2009, Defendants, and any of their principals, agents, servants, employees, successors and assigns and all those in privity, concert or participation with Defendants are hereby immediately enjoined and restrained from using, imitating, copying, duplicating or otherwise making any use of RE/MAX's red-over-white-over-blue horizontal bar design as shown in U.S. Registration Nos. 1,702,048; 1,691,854 and 1,720,592 and Texas State Trademark Registration No. 55729 (the "RE/MAX Trademark") or any other designs that are confusingly similar to the RE/MAX Trademark in connection with providing, advertising or promoting real estate or related services, including without limitation:

(i) imitating, copying, duplicating, or otherwise making any use of the RE/MAX Trademark or any mark confusingly similar to the RE/MAX Trademark;

(ii) manufacturing, producing, distributing, circulating, selling, or otherwise disposing of any printed material which bears any copy or colorable imitation of the RE/MAX Trademark;

(iii) using any unauthorized copy or colorable imitation of the RE/MAX Trademark in such fashion as is likely to relate or connect Trend Setter, Abraham and/or Miller with RE/MAX or the RE/MAX Network;

(iv) using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that any service advertised, promoted, offered, or sold by Trend Setter, Abraham and/or Miller is sponsored, endorsed, connected with, approved, or authorized by RE/MAX;

(v) causing likelihood of confusion or injury to RE/MAX's business reputation and to the distinctiveness of the RE/MAX Trademark by unauthorized use of a confusingly similar sign design;

(vi) engaging in any other activity constituting unfair competition or infringement of the RE/MAX Trademark or RE/MAX's rights in, or to use, or to exploit the same; and

(vii) assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in subparagraphs (i) through (vi) above.

6. Defendants and their principals, agents, servants, employees, successors and assigns and all those in privity, concert or participation with Defendants shall:

(i) Immediately cease all use of the sign depicted below, including but not limited to ceasing manufacture, purchase and/or distribution and display of such sign. In no event shall Defendants, their principals, agents, servants, employees, successors and assigns or any others in privity, concert or participation with Defendants use any sign design confusingly similar to the sign depicted below.



(ii) Defendants shall be responsible for ensuring compliance with this Order by their principals, agents, servants, employees, successors and assigns and all those in privity, concert or participation with Defendants, including, without limitation, all agents affiliated with Defendant Trend Setter since commencement of this litigation.

7. Defendants shall submit a report to the Court, within five days of entry of this Order, supplementing their report of November 5, 2009 to update and expand on the information contained in the prior Report to the extent that any information has changed, and confirming that as of that date of supplementation, no Trend Setter license sponsorship was terminated for non-compliance with the Order and certifying under penalty of perjury that Defendants, and their principals, agents, servants, employees, successors and assigns and all those in privity, concert or participation with Defendants are in compliance with this Order, or providing detailed reasons why any such entities or persons are not in compliance with this Order.

8. The parties have settled the damages portion of the case in a confidential settlement agreement, which is incorporated by reference herein and made a part hereof. The Court further orders that any failure by Defendants to make monetary payments as set forth in the parties' confidential settlement agreement as referenced and incorporated herein violates this Final Judgment and Permanent Injunction Against Defendants.

9. RE/MAX shall be entitled to its costs and attorneys' fees expended in pursuing compliance with or seeking enforcement of any provision of the Final Judgment and Permanent Injunction Against Defendants.

10. The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Final Judgment and Permanent Injunction Against Defendants by a finding of contempt.

ENTERED this 10th day of November, 2009.

Lee H. Rosenthal
United States District Judge

**APPROVED AS TO FORM AND CONTENT:**

/John R. Posthumus/
John R. Posthumus
*admitted pro hac vice*
Gayle L. Strong
*admitted pro hac vice*
GREENBERG TRAURIG LLP
1200 Seventeenth Street, Suite 2400
Denver, Colorado 80202

/Mayur M. Patel/
Mayur M. Patel
MAYUR M. PATEL, P.C.
7211 Regency Square Blvd., Suite 154
Houston Texas 77036

Attorneys for Defendants Trend Setter Realty, LLC, Pavnouty Abraham, and Deborah Miller.

Anthony F. Matheny
Texas State Bar No. 24002543
GREENBERG TRAURIG LLP
1000 Louisiana Street, Suite 1800
Houston, Texas 77002

Attorneys for Plaintiff RE/MAX International, Inc.